# SUBPOENA

## BY AUTHORITY OF THE HOUSE OF REPRESENTATIVES OF THE CONGRESS OF THE UNITED STATES OF AMERICA

To _Donald J. Trump, 45th President of the United States_

You are hereby commanded to be and appear before the _Select Committee to Investigate the January 6th Attack on the United States Capitol_ of the House of Representatives of the United States at the place, date, and time specified below.

[✓] **to produce the things identified on the attached schedule** touching matters of inquiry committed to said committee or subcommittee; and you are not to depart without leave of said committee or subcommittee.

> Place of production: 1540A Longworth House Office Building, Washington, DC 20515
>
> Date: November 4, 2022      Time: 10:00 AM

[✓] **to testify at a deposition** touching matters of inquiry committed to said committee or subcommittee; and you are not to depart without leave of said committee or subcommittee.

> Place of testimony: US Capitol Building, Washington, DC 20515, or by videoconference
>
> Date: November 14, 2022      Time: 10:00 AM

[ ] **to testify at a hearing** touching matters of inquiry committed to said committee or subcommittee; and you are not to depart without leave of said committee or subcommittee.

> Place of testimony: _____
>
> Date: _____      Time: _____

To _any authorized staff member or the United States Marshals Service_ _____ to serve and make return.

Witness my hand and the seal of the House of Representatives of the United States, at the city of Washington, D.C. this __21st__ day of __October__, 20__22__.

_Bennie G. Thompson_
Chairman or Authorized Member

Attest: _[signature]_
Clerk

# PROOF OF SERVICE

Subpoena for _Donald J. Trump, 45th President of the United States_

Address _1100 S. Ocean Boulevard_

_Palm Beach, FL 33480_

before the _Select Committee to Investigate the January 6th Attack on the United States Capitol_

*U.S. House of Representatives*
*117th Congress*

Served by (print name) _____

Title _____

Manner of service _____

_____

Date _____

Signature of Server _____

Address _____

_____

Case 9:22-cv-81758-XXXX   Document 1-1   Entered on FLSD Docket 11/11/2022   Page 3 of 18

BENNIE G. THOMPSON, MISSISSIPPI
CHAIRMAN

ZOE LOFGREN, CALIFORNIA
ADAM B. SCHIFF, CALIFORNIA
PETE AGUILAR, CALIFORNIA
STEPHANIE N. MURPHY, FLORIDA
JAMIE RASKIN, MARYLAND
ELAINE G. LURIA, VIRGINIA
LIZ CHENEY, WYOMING
ADAM KINZINGER, ILLINOIS



U.S. House of Representatives
Washington, DC 20515

january6th.house.gov
(202) 225-7800

One Hundred Seventeenth Congress
Select Committee to Investigate the January 6th Attack on the United States Capitol

October 21, 2022

President Donald J. Trump
1100 S. Ocean Boulevard
Palm Beach, FL 33480

Dear President Trump:

United States House of Representatives Resolution 503 instructs the Select Committee to Investigate the January 6th Attack on the United States Capitol ("Select Committee") to investigate the facts, circumstances, and causes of the January 6th attack and issues relating to the peaceful transfer of power. Pursuant to that directive, we have interviewed more than a thousand witnesses, reviewed over a million documents, conducted public hearings, and vindicated our rights in court against those who have tried to keep relevant information from the Select Committee. As demonstrated in our hearings, we have assembled overwhelming evidence, including from dozens of your former appointees and staff, that you personally orchestrated and oversaw a multi-part effort to overturn the 2020 presidential election and to obstruct the peaceful transition of power.

This multi-part effort included, but was not limited to:

- Purposely and maliciously disseminating false allegations of fraud related to the 2020 presidential election in order to aid your effort to overturn the election and for purposes of soliciting contributions;

- Attempting to corrupt the Department of Justice, including by soliciting and enlisting Department officials to make false statements and aid your effort to overturn the presidential election;

- Without any evidentiary basis, illegally pressuring state officials and legislators to change the results of the election in their states;

- Orchestrating and overseeing an effort to obtain and transmit false electoral certificates to Congress and the National Archives;

- Despite knowing specifically that it was illegal, corruptly pressuring your own Vice President to unilaterally refuse to count electoral votes during Congress's joint session on January 6th;

President Donald J. Trump
Page 2

- Pressuring Members of Congress to object to valid slates of electors from several states;

- Filing false information, under oath, in federal court;

- Summoning tens of thousands of supporters to Washington and, knowing they were angry and some were armed, sending them to the Capitol;

- Sending a social media message to the nation at 2:24 p.m.—while knowing full well that the violent attack on the Capitol was occurring—in which you incited further violence by publicly condemning your Vice President; and

- Refusing for hours to disband your rioting supporters by instructing them to leave the Capitol, while you watched the attack unfold on television.

You took all of these actions despite the rulings of more than 60 courts rejecting your election fraud claims and other challenges to the legality of the 2020 presidential election, despite having specific and detailed information from the Justice Department and your senior campaign staff informing you that your election claims were false, and despite your obligation as President to ensure that the laws of our nation are faithfully executed. In short, you were at the center of the first and only effort by any U.S. President to overturn an election and obstruct the peaceful transition of power, ultimately culminating in a bloody attack on our own Capitol and on the Congress itself. The evidence demonstrates that you knew this activity was illegal and unconstitutional, and also knew that your assertions of fraud were false. But, to be clear, even if you now claim that you actually believed your own false election claims, that is not a defense; your subjective belief could not render this conduct justified, excusable, or legal.

Because of your central role in each element of these actions, the Select Committee unanimously directed the issuance of a subpoena seeking your testimony and relevant documents in your possession on these and related topics. This subpoena calls for testimony regarding your dealings with multiple individuals who have now themselves invoked their Fifth Amendment privilege against self-incrimination regarding their communications with you, including Roger Stone, Lt. Gen. Michael Flynn, U.S. Army (Retired), John Eastman, Jeffrey Clark, and Kelli Ward. These Fifth Amendment assertions—made by persons with whom you interacted—related directly to you and your conduct. They provide specific examples where your truthful testimony under oath will be important.

In addition, as is likely obvious from the topics identified in the bullets above, we are considering multiple legislative recommendations intended to provide further assurance that no future President could succeed at anything even remotely similar to the unlawful steps you took to overturn the election. Your testimony and documentary evidence would further inform the Select Committee's ongoing work.

President Donald J. Trump
Page 3

We recognize that a subpoena to a former President is a significant and historic action. We do not take this action lightly. But as you likely know, you would not be the first former president to testify before Congress or to receive a congressional subpoena. Former Presidents John Quincy Adams, John Tyler, Theodore Roosevelt, William Howard Taft, Herbert Hoover, Harry Truman, and Gerald Ford each testified before Congress after they left office. President Roosevelt explained during his congressional testimony, "an ex-President is merely a citizen of the United States, like any other citizen, and it is his plain duty to try to help this committee or respond to its invitation."[1] Even sitting Presidents, including Abraham Lincoln and Gerald Ford, also testified before Congress. Further, both former and sitting presidents including Presidents Nixon,[2] Tyler,[3] and Quincy Adams,[4] have provided evidence in response to congressional subpoenas.

This subpoena hereby orders the production of relevant documentary material as set forth on the attached schedule by November 4, 2022, followed by your participation in one or more days of deposition testimony, beginning on or about November 14, 2022, and continuing on subsequent days as necessary. The deposition will be under oath and will be led by the professional staff of the Select Committee—including multiple former federal prosecutors—as well as Members. As with all witnesses who are required to appear before the Select Committee, you may raise any relevant privilege objections to specific questions asked during your deposition. If, like other witnesses identified above, you intend to invoke your Fifth Amendment rights against self-incrimination for your testimony, please so inform the Select Committee promptly.

Likewise, for any document described in the schedule, you may make relevant objections in a privilege log, which shall be produced to the Select Committee by the subpoena return date. Any privilege assertions should be made with accompanying information sufficient to allow an informed assessment of the validity of the asserted privilege. We recognize that the Supreme Court has ruled that former Presidents retain the limited ability to assert executive privilege. But any such privilege is qualified, and, as the D.C. Circuit explained in the case involving a request for your official presidential records, the Select Committee has a "uniquely compelling need" for the requested information. *Trump v. Thompson*, 20 F.4th 10, 37 (D.C. Cir. 2021), *request for stay denied*, 142 S. Ct. 680, 680 (2022), *petition for certiorari denied*, 142 S. Ct. 130 (2022).

The attached schedule is narrowly focused on records in your custody and control that you are uniquely positioned to provide to the Select Committee in light of your central role in the multi-

---

[1] *See* Ronald Rotunda, *Presidents and Ex-Presidents as Witnesses: A Brief Historical Footnote*, 1975 U. Ill. L.F. 1, 4 (1975) (citing U.S. House Special Committee on the Investigation of the United States Steel Corporation, 62d Cong., 1st Sess., at p. 1392).
[2] U.S. House Judiciary Committee, Report on Impeachment of Richard M. Nixon, President of the United States, 93d Cong., 2d Sess., at p.196.
[3] *See* Rotunda, *supra* at p. 7 (citing H.R. Rep. No. 684, 29th Cong., 1st Sess., at 8 – 11 (1846) and H.R. Rep. No. 686, 29th Cong., 1st Sess., at 22-25 (1846)); Stephen W. Stathis, "Former Presidents as Congressional Witnesses," *Presidential Studies Quarterly*, Vol. 13, No. 3, (Summer, 1983), at pp. 458-459.
[4] *See* Rotunda, *supra,* at p. 7 (citing H.R. Rep. No. 686, 29th Cong., 1st Sess., at pp. 22 – 25 (1846)).

President Donald J. Trump
Page 4

part effort to overturn the results of the 2020 presidential election and interfere with the peaceful transfer of power.

  The Select Committee looks forward to your cooperation with this subpoena.

              Sincerely,

Bennie G. Thompson
Chairman

Liz Cheney
Vice Chair

Enclosures.

President Donald J. Trump
Page 5

## SCHEDULE

In accordance with the attached definitions and instructions, you, Donald J. Trump, are hereby required to produce all documents and communications in your possession, custody, or control—including any such documents or communications stored or located in personal accounts, on personal devices (e.g., personal computers, cellular phones, tablets, etc.), and/or on personal applications (e.g., email accounts, contact lists, calendar entries, etc.); and excluding copies of public media accounts unless you have altered such copies to reflect your thoughts and impressions—relating or referring in any way to the following items:

1. All records of any telephone calls, text messages, or communications sent through Signal or any other means, placed or received by you or at your direction on January 6, 2021, including records of any calls you joined as an active or passive participant.

2. All records of any telephone calls, text messages, or communications sent through Signal or any other means, placed or received by you or at your direction with any Member of Congress from December 18, 2020, to January 6, 2021,[5] relating or referring in any way to the 2020 presidential election, including records of any calls you joined as an active or passive participant.

3. All photographs and video recordings taken on January 6, 2021, relating or referring in any way to the January 6, 2021, rally on the Ellipse, the joint session of Congress on January 6, 2021, or the riot[6] that occurred at the United States Capitol on January 6, 2021.

4. All records of any telephone calls, text messages, or communications through Signal or any other means, placed or received by you or at your direction, including records of any calls you joined as an active or passive participant, from November 3, 2020, to January 5, 2021, relating or referring in any way to the 2020 presidential election or the joint session of Congress on January 6, 2021.

5. For the period from November 3, 2020, to the present, all notes (including electronic and hand-written notes), summaries, memoranda of conversation, readouts, or other documents containing or memorializing communications you made or received and relating or referring in any way to the joint session of Congress on January 6, 2021, or to the riot that occurred at the United States Capitol on January 6, 2021, including, but not limited to, any information about your possible travel to the Capitol on that day.

6. For the period from September 1, 2020, to the present, all documents, including communications sent or received through Signal or any other means, relating or referring in any way to the Oath Keepers or any members, the Proud Boys or any members, any

---

[5] All date ranges in this schedule should be interpreted to include both the beginning and end dates.
[6] On January 6, 2021, law enforcement declared a riot at the United States Capitol. As used in this document schedule, the term "riot" refers to actual or attempted violence and trespassing, and preparations for or aftermath of such violence and trespassing, that made up the riot.

President Donald J. Trump
Page 6

    other similar militia group or its members; or anyone who assembled in Washington, D.C., on January 6th for purposes related to the 2020 presidential election, the joint session of Congress, or the rally on the Ellipse.

7. For the period from September 1, 2020, to January 20, 2021, any communications, sent or received through Signal or any other means, including but not limited to memoranda to you, referring or relating in any way to plans or efforts to: (1) encourage state legislatures, state legislators, or other state or local officials to take any measure to delay or change the certification of the presidential election; or (2) have electors pledged to Donald J. Trump meet and cast Electoral College votes in any state that, at any time before or after such a meeting, certified Joseph R. Biden, Jr. as the winner of the state's popular vote.

8. All documents, including communications sent or received through Signal or any other means, relating or referring in any way to any speech, public statement, tweet, or other social media post from November 3, 2020, to January 6, 2021, regarding the Vice President, the joint session of Congress, or the January 6, 2021, Ellipse rally in Washington, D.C.

9. All documents, including communications sent or received through Signal or any other means, concerning both the Department of Justice and actions, statements, or correspondence relating to the 2020 presidential election.

10. For the period from November 3, 2020, to the present, all documents, including communications sent or received through Signal or any other means, relating or referring in any way to Vice President Michael Pence's role, or any actions he might take, during the joint session of Congress on January 6, 2021.

11. For the period from November 3, 2020, to January 6, 2021, all documents, including communications sent or received through Signal or any other means, relating or referring in any way to Representative Scott Perry or any other Member of Congress and regarding presidential electoral votes; planning for January 6, 2021, or the joint session on that day; changes of personnel at the Department of Justice; or any other topic related to an effort to alter the results of the November 3, 2020, presidential election.

12. For the period from November 3, 2020, to January 6, 2021, all documents, including communications sent or received through Signal or any other means, relating or referring in any way to efforts to encourage or summon individuals to travel to Washington, D.C. on January 6, 2021, for events related to the 2020 presidential election, the joint session, or the rally on the Ellipse.

13. For the period from November 3, 2020, to the present, all documents, including communications sent or received through Signal or any other means, relating or referring in any way to filing or the potential for filing any lawsuit, petition, motion, or other court filing that may have had the effect of delaying or disrupting the joint session of Congress

President Donald J. Trump
Page 7

on January 6, 2021, including any material relating to the email communications identified and ordered disclosed by Judge Carter's Order of October 19, 2022, in *Eastman v. Thompson*, Case No. 8:22-cv-00099-DOC-DFM (C.D. Cal.).

14. To the extent not already called for by other paragraphs of this schedule, any communications sent or received through Signal or any other means, for the period from November 3, 2020, to January 20, 2021, including but not limited to memoranda provided to you, involving any of the following individuals:
    - Roger Stone,
    - Stephen Bannon,
    - Lt. Gen. Michael Flynn, U.S. Army (Retired),
    - Jeffrey Clark,
    - John Eastman,
    - Rudolph Giuliani,
    - Jenna Ellis,
    - Sidney Powell,
    - Kenneth Chesebro,
    - Boris Epshteyn,
    - Christina Bobb,
    - Cleta Mitchell, or
    - Patrick Byrne.

15. All documents, including communications sent or received through Signal or any other means, from November 3, 2020, to January 6, 2021, relating or referring in any way to litigation losses related to the 2020 presidential election.

16. All documents, including communications sent or received through Signal or any other means, from July 1, 2021, to the present, relating or referring in any way to the investigation by the Select Committee and involving contacts with, or efforts to contact: (1) witnesses who appeared or who were or might be expected to appear before the Select Committee, including witnesses who served as White House staff during your administration, who served as staff for your 2020 campaign, and who served or currently serve in the United States Secret Service; or (2) counsel who represented such witnesses. The documents referenced in (1) and (2) include but are not limited to any communications regarding directly or indirectly paying the legal fees for any such witnesses, or finding, offering, or discussing employment for any such witnesses, and any communications with your former Deputy Chief of Staff Anthony Ornato or any employee of the Secret Service with whom you interacted on January 6, 2021.

17. All documents, including communications sent or received through Signal or any other means, from November 3, 2020, to January 6, 2021, relating or referring in any way to fundraising efforts based on claims of election fraud or a stolen election.

18. All documents, including communications sent or received through Signal or any other means, relating or referring in any way to the destruction of materials that previously

President Donald J. Trump
Page 8

    existed and that would have been covered by any part of this subpoena, or any other subpoena issued by the Select Committee to other individuals.

19. Information sufficient to identify every telephone or other communications device you used from November 3, 2020, to January 20, 2021.

117TH CONGRESS
2D SESSION

# COMMITTEE RESOLUTION 1

Directing the Chairman to issue a subpoena to Donald J. Trump.

---

IN THE SELECT COMMITTEE TO INVESTIGATE THE JANUARY 6TH ATTACK ON THE UNITED STATES CAPITOL

OCTOBER 13, 2022

Ms. CHENEY submitted the following resolution

---

# COMMITTEE RESOLUTION

Directing the Chairman to issue a subpoena to Donald J. Trump.

1   *Resolved,* That the Chairman be, and is hereby, di-
2  rected to subpoena Donald J. Trump for documents and
3  testimony in connection with the January 6th attack on
4  the United States Capitol pursuant to section 5(c)(4) of
5  House Resolution 503 and clause 2(m) of rule XI of the
6  Rules of the House of Representatives.

○

**DOCUMENT PRODUCTION DEFINITIONS AND INSTRUCTIONS**

1. In complying with this request, produce all responsive documents, regardless of classification level, that are in your possession, custody, or control, whether held by you or your past or present agents, employees, and representatives acting on your behalf. Produce all documents that you have a legal right to obtain, that you have a right to copy, or to which you have access, as well as documents that you have placed in the temporary possession, custody, or control of any third party.

2. Requested documents, and all documents reasonably related to the requested documents, should not be destroyed, altered, removed, transferred, or otherwise made inaccessible to the Select Committee to Investigate the January 6th Attack on the United States Capitol ("Committee').

3. In the event that any entity, organization, or individual denoted in this request is or has been known by any name other than that herein denoted, the request shall be read also to include that alternative identification.

4. The Committee's preference is to receive documents in a protected electronic form (i.e., password protected CD, memory stick, thumb drive, or secure file transfer) in lieu of paper productions. With specific reference to classified material, you will coordinate with the Committee's Security Officer to arrange for the appropriate transfer of such information to the Committee. This includes, but is not necessarily limited to: a) identifying the classification level of the responsive document(s); and b) coordinating for the appropriate transfer of any classified responsive document(s).

5. Electronic document productions should be prepared according to the following standards:

    a. If the production is completed through a series of multiple partial productions, field names and file order in all load files should match.

    b. All electronic documents produced to the Committee should include the following fields of metadata specific to each document, and no modifications should be made to the original metadata:

    BEGDOC, ENDDOC, TEXT, BEGATTACH, ENDATTACH, PAGECOUNT, CUSTODIAN, RECORDTYPE, DATE, TIME, SENTDATE, SENTTIME, BEGINDATE, BEGINTIME, ENDDATE, ENDTIME, AUTHOR, FROM, CC, TO, BCC, SUBJECT, TITLE, FILENAME, FILEEXT, FILESIZE, DATECREATED, TIMECREATED, DATELASTMOD, TIMELASTMOD, INTMSGID, INTMSGHEADER, NATIVELINK, INTFILPATH, EXCEPTION, BEGATTACH.

6. Documents produced to the Committee should include an index describing the contents of the production. To the extent more than one CD, hard drive, memory stick, thumb drive, zip file, box, or folder is produced, each should contain an index describing its contents.

7. Documents produced in response to this request shall be produced together with copies of file labels, dividers, or identifying markers with which they were associated when the request was served.

8. When you produce documents, you should identify the paragraph(s) or request(s) in the Committee's letter to which the documents respond.

9. The fact that any other person or entity also possesses non-identical or identical copies of the same documents shall not be a basis to withhold any information.

10. The pendency of or potential for litigation shall not be a basis to withhold any information.

11. In accordance with 5 U.S.C.§ 552(d), the Freedom of Information Act (FOIA) and any statutory exemptions to FOIA shall not be a basis for withholding any information.

12. Pursuant to 5 U.S.C. § 552a(b)(9), the Privacy Act shall not be a basis for withholding information.

13. If compliance with the request cannot be made in full by the specified return date, compliance shall be made to the extent possible by that date. An explanation of why full compliance is not possible shall be provided along with any partial production, as well as a date certain as to when full production will be satisfied.

14. In the event that a document is withheld on any basis, provide a log containing the following information concerning any such document: (a) the reason it is being withheld, including, if applicable, the privilege asserted; (b) the type of document; (c) the general subject matter; (d) the date, author, addressee, and any other recipient(s); (e) the relationship of the author and addressee to each other; and (f) the basis for the withholding.

15. If any document responsive to this request was, but no longer is, in your possession, custody, or control, identify the document (by date, author, subject, and recipients), and explain the circumstances under which the document ceased to be in your possession, custody, or control. Additionally, identify where the responsive document can now be found including name, location, and contact information of the entity or entities now in possession of the responsive document(s).

16. If a date or other descriptive detail set forth in this request referring to a document

is inaccurate, but the actual date or other descriptive detail is known to you or is otherwise apparent from the context of the request, produce all documents that would be responsive as if the date or other descriptive detail were correct.

17. This request is continuing in nature and applies to any newly-discovered information. Any record, document, compilation of data, or information not produced because it has not been located or discovered by the return date shall be produced immediately upon subsequent location or discovery.

18. All documents shall be Bates-stamped sequentially and produced sequentially.

19. Upon completion of the production, submit a written certification, signed by you or your counsel, stating that: (1) a diligent search has been completed of all documents in your possession, custody, or control that reasonably could contain responsive documents; and
(2) all documents located during the search that are responsive have been produced to the Committee.

## Definitions

1. The term "document" means any written, recorded, or graphic matter of any nature whatsoever, regardless of classification level, how recorded, or how stored/displayed (e.g. on a social media platform) and whether original or copy, including, but not limited to, the following: memoranda, reports, expense reports, books, manuals, instructions, financial reports, data, working papers, records, notes, letters, notices, confirmations, telegrams, receipts, appraisals, pamphlets, magazines, newspapers, prospectuses, communications, electronic mail (email), contracts, cables, notations of any type of conversation, telephone call, meeting or other inter-office or intra-office communication, bulletins, printed matter, computer printouts, computer or mobile device screenshots/screen captures, teletypes, invoices, transcripts, diaries, analyses, returns, summaries, minutes, bills, accounts, estimates, projections, comparisons, messages, correspondence, press releases, circulars, financial statements, reviews, opinions, offers, studies and investigations, questionnaires and surveys, and work sheets (and all drafts, preliminary versions, alterations, modifications, revisions, changes, and amendments of any of the foregoing, as well as any attachments or appendices thereto), and graphic or oral records or representations of any kind (including without limitation, photographs, charts, graphs, microfiche, microfilm, videotape, recordings and motion pictures), and electronic, mechanical, and electric records or representations of any kind (including, without limitation, tapes, cassettes, disks, and recordings) and other written, printed, typed, or other graphic or recorded matter of any kind or nature, however produced or reproduced, and whether preserved in writing, film, tape, disk, videotape, or otherwise. A document bearing any notation not a part of the original text is to be considered a separate document. A draft or non-identical copy is a separate document within the meaning of this term.

2. The term "communication" means each manner or means of disclosure or exchange of information, regardless of means utilized, whether oral, electronic, by document or otherwise, and whether in a meeting, by telephone, facsimile, mail, releases, electronic message including email (desktop or mobile device), text message, instant message, MMS or SMS message, message application, through a social media or online platform, or otherwise.

3. The terms "and" and "or" shall be construed broadly and either conjunctively or disjunctively to bring within the scope of this request any information that might otherwise be construed to be outside its scope. The singular includes plural number, and vice versa. The masculine includes the feminine and neutral genders.

4. The term "including" shall be construed broadly to mean "including, but not limited to."

5. The term "Company" means the named legal entity as well as any units, firms, partnerships, associations, corporations, limited liability companies, trusts, subsidiaries, affiliates, divisions, departments, branches, joint ventures, proprietorships, syndicates, or other legal, business or government entities over which the named legal entity exercises control or in which the named entity has any ownership whatsoever.

6. The term "identify," when used in a question about individuals, means to provide the following information: (a) the individual's complete name and title; (b) the individual's business or personal address and phone number; and (c) any and all known aliases.

7. The term "related to" or "referring or relating to," with respect to any given subject, means anything that constitutes, contains, embodies, reflects, identifies, states, refers to, deals with, or is pertinent to that subject in any manner whatsoever.

8. The term "employee" means any past or present agent, borrowed employee, casual employee, consultant, contractor, de facto employee, detailee, assignee, fellow, independent contractor, intern, joint adventurer, loaned employee, officer, part-time employee, permanent employee, provisional employee, special government employee, subcontractor, or any other type of service provider.

9. The term "individual" means all natural persons and all persons or entities acting on their behalf.

health, safety, and well-being of others present in the Chamber and surrounding areas. Members and staff will not be permitted to enter the Hall of the House without wearing a mask. Masks will be available at the entry points for any Member who forgets to bring one. The Chair views the failure to wear a mask as a serious breach of decorum. The Sergeant-at-Arms is directed to enforce this policy. Based upon the health and safety guidance from the attending physician and the Sergeant-at-Arms, the Chair would further advise that all Members should leave the Chamber promptly after casting their votes. Furthermore, Members should avoid congregating in the rooms leading to the Chamber, including the Speaker's lobby. The Chair will continue the practice of providing small groups of Members with a minimum of 5 minutes within which to cast their votes. Members are encouraged to vote with their previously assigned group. After voting, Members must clear the Chamber to allow the next group a safe and sufficient opportunity to vote. It is essential for the health and safety of Members, staff, and the U.S. Capitol Police to consistently practice social distancing and to ensure that a safe capacity be maintained in the Chamber at all times. To that end, the Chair appreciates the cooperation of Members and staff in preserving order and decorum in the Chamber and in displaying respect and safety for one another by wearing a mask and practicing social distancing. All announced policies, including those addressing decorum in debate and the conduct of votes by electronic device, shall be carried out in harmony with this policy during the pendency of a covered period.

## 117TH CONGRESS REGULATIONS FOR USE OF DEPOSITION AUTHORITY

COMMITTEE ON RULES,
HOUSE OF REPRESENTATIVES,
*Washington, DC, January 4, 2021.*
Hon. NANCY PELOSI,
*Speaker, House of Representatives,*
*Washington, DC.*

MADAM SPEAKER: Pursuant to section 3(b) of House Resolution 8, 117th Congress, I hereby submit the following regulations regarding the conduct of depositions by committee and select committee counsel for printing in the Congressional Record.
Sincerely,
JAMES P. MCGOVERN,
*Chairman, Committee on Rules.*

REGULATIONS FOR THE USE OF DEPOSITION AUTHORITY

1. Notices for the taking of depositions shall specify the date, time, and place of examination. Depositions shall be taken under oath administered by a member or a person otherwise authorized to administer oaths. Depositions may continue from day to day.

2. Consultation with the ranking minority member shall include three days' notice before any deposition is taken. All members of the committee shall also receive three days written notice that a deposition will be taken, except in exigent circumstances. For purposes of these procedures, a day shall not include Saturdays, Sundays, or legal holidays except when the House is in session on such a day.

3. Witnesses may be accompanied at a deposition by personal, nongovernmental counsel to advise them of their rights. Only members, committee staff designated by the chair or ranking minority member, an official reporter, the witness, and the witness's counsel are permitted to attend. Observers or counsel for other persons, including counsel for government agencies, may not attend.

4. The chair of the committee noticing the deposition may designate that deposition as part of a joint investigation between committees, and in that case, provide notice to the members of the committees. If such a designation is made, the chair and ranking minority member of the additional committee(s) may designate committee staff to attend pursuant to regulation 3. Members and designated staff of the committees may attend and ask questions as set forth below.

5. A deposition shall be conducted by any member or committee counsel designated by the chair or ranking minority member of the Committee that noticed the deposition. When depositions are conducted by committee counsel, there shall be no more than two committee counsel permitted to question a witness per round. One of the committee counsel shall be designated by the chair and the other by the ranking minority member per round.

6. Deposition questions shall be propounded in rounds. The length of each round shall not exceed 60 minutes per side, and shall provide equal time to the majority and the minority. In each round, the member(s) or committee counsel designated by the chair shall ask questions first, and the member(s) or committee counsel designated by the ranking minority member shall ask questions second.

7. Objections must be stated concisely and in a non-argumentative and non-suggestive manner. A witness's counsel may not instruct a witness to refuse to answer a question, except to preserve a privilege. In the event of professional, ethical, or other misconduct by the witness's counsel during the deposition, the Committee may take any appropriate disciplinary action. The witness may refuse to answer a question only to preserve a privilege. When the witness has refused to answer a question to preserve a privilege, members or staff may (i) proceed with the deposition, or (ii) either at that time or at a subsequent time, seek a ruling from the Chair either by telephone or otherwise. If the Chair overrules any such objection and thereby orders a witness to answer any question to which an objection was lodged, the witness shall be ordered to answer. If a member of the committee chooses to appeal the ruling of the chair, such appeal must be made within three days, in writing, and shall be preserved for committee consideration. The Committee's ruling on appeal shall be filed with the clerk of the Committee and shall be provided to the members and witness no less than three days before the reconvened deposition. A deponent who refuses to answer a question after being directed to answer by the chair may be subject to sanction, except that no sanctions may be imposed if the ruling of the chair is reversed by the committee on appeal.

8. The Committee chair shall ensure that the testimony is either transcribed or electronically recorded or both. If a witness's testimony is transcribed, the witness or the witness's counsel shall be afforded an opportunity to review a copy. No later than five days after the witness has been notified of the opportunity to review the transcript, the witness may submit suggested changes to the chair. Committee staff may make any typographical and technical changes. Substantive changes, modifications, clarifications, or amendments to the deposition transcript submitted by the witness must be accompanied by a letter signed by the witness requesting the changes and a statement of the witness's reasons for each proposed change. Any substantive changes, modifications, clarifications, or amendments shall be included as an appendix to the transcript conditioned upon the witness signing the transcript.

9. The individual administering the oath, if other than a member, shall certify on the transcript that the witness was duly sworn. The transcriber shall certify that the transcript is a true record of the testimony, and the transcript shall be filed, together with any electronic recording, with the clerk of the committee in Washington, DC. Depositions shall be considered to have been taken in Washington, DC, as well as the location actually taken once filed there with the clerk of the committee for the committee's use. The chair and the ranking minority member shall be provided with a copy of the transcripts of the deposition at the same time.

10. The chair and ranking minority member shall consult regarding the release of deposition testimony, transcripts, or recordings, and portions thereof. If either objects in writing to a proposed release of a deposition testimony, transcript, or recording, or a portion thereof, the matter shall be promptly referred to the committee for resolution.

11. A witness shall not be required to testify unless the witness has been provided with a copy of section 3(b) of H. Res. 8, 117th Congress, and these regulations.

## REMOTE COMMITTEE PROCEEDINGS REGULATIONS PURSUANT TO HOUSE RESOLUTION 8, 117TH CONGRESS

COMMITTEE ON RULES,
HOUSE OF REPRESENTATIVES,
*Washington, DC, January 4, 2021.*
Hon. NANCY PELOSI,
*Speaker, House of Representatives,*
*Washington, DC.*

MADAM SPEAKER: Pursuant to section 3(s) of House Resolution 8, 117th Congress, I hereby submit the following regulations regarding remote committee proceedings for printing in the CONGRESSIONAL RECORD.
Sincerely,
JAMES P. MCGOVERN,
*Chairman,*
*Committee on Rules.*

REMOTE COMMITTEE PROCEEDINGS REGULATIONS PURSUANT TO HOUSE RESOLUTION 8

A. PRESENCE AND VOTING

1. Members participating remotely in a committee proceeding must be visible on the software platform's video function to be considered in attendance and to participate unless connectivity issues or other technical problems render the member unable to fully participate on camera (except as provided in regulations A.2 and A.3).

2. The exception in regulation A.1 for connectivity issues or other technical problems does not apply if a point of order has been made that a quorum is not present. Members participating remotely must be visible on the software platform's video function in order to be counted for the purpose of establishing a quorum.

3. The exception in regulation A.1 for connectivity issues or other technical problems does not apply during a vote. Members participating remotely must be visible on the software platform's video function in order to vote.

4. Members participating remotely off-camera due to connectivity issues or other technical problems pursuant to regulation A.1 must inform committee majority and minority staff either directly or through staff.

5. The chair shall make a good faith effort to provide every member experiencing connectivity issues an opportunity to participate fully in the proceedings, subject to regulations A.2 and A.3.

# H. Res. 8

*In the House of Representatives, U. S.,*

*January 4, 2021.*

*Resolved,*

**SECTION 1. ADOPTION OF THE RULES OF THE ONE HUNDRED SIXTEENTH CONGRESS.**

The Rules of the House of Representatives of the One Hundred Sixteenth Congress, including applicable provisions of law or concurrent resolution that constituted rules of the House at the end of the One Hundred Sixteenth Congress, are adopted as the Rules of the House of Representatives of the One Hundred Seventeenth Congress, with amendments to the standing rules as provided in section 2, and with other orders as provided in this resolution.

**SEC. 2. CHANGES TO THE STANDING RULES.**

(a) CONFORMING CHANGE.—In clause 2(i) of rule II—

(1) strike the designation of subparagraph (1); and

(2) strike subparagraph (2).

(b) OFFICE OF DIVERSITY AND INCLUSION AND OFFICE OF THE WHISTLEBLOWER OMBUDS.—

16

**SEC. 3. SEPARATE ORDERS.**

(a) MEMBER DAY HEARING REQUIREMENT.—During the first session of the One Hundred Seventeenth Congress, each standing committee (other than the Committee on Ethics) or each subcommittee thereof (other than a subcommittee on oversight) shall hold a hearing at which it receives testimony from Members, Delegates, and the Resident Commissioner on proposed legislation within its jurisdiction, except that the Committee on Rules may hold such hearing during the second session of the One Hundred Seventeenth Congress.

(b) DEPOSITION AUTHORITY.—

(1) During the One Hundred Seventeenth Congress, the chair of a standing committee (other than the Committee on Rules), and the chair of the Permanent Select Committee on Intelligence, upon consultation with the ranking minority member of such committee, may order the taking of depositions, including pursuant to subpoena, by a member or counsel of such committee.

(2) Depositions taken under the authority prescribed in this subsection shall be subject to regulations issued by the chair of the Committee on Rules and printed in the Congressional Record.

(c) WAR POWERS RESOLUTION.—During the One Hundred Seventeenth Congress, a motion to discharge a measure introduced pursuant to section 6 or section 7 of the War