

2000 Duke Street, Suite 300<br>Alexandria, CA 22314

David A. Warrington<br>Phone: 703.574.1206<br>DWarrington@dhillonlaw.com

November 2, 2022

**VIA EMAIL**
Timothy J. Heaphy
Chief Investigative Counsel
January 6th Committee
U.S. House of Representatives
202-309-5396 (cell)
Tim.Heaphy@mail.house.gov

> Re: **Subpoena to Donald J. Trump, 45th President of the United States**
> **Letter in Furtherance of the November 1, 2022, Phone Call Between Committee's**
> **Chief Investigative Counsel and Counsel for President Donald J. Trump**

Dear Mr. Heaphy:

As you know, our law firm represents President Donald J. Trump ("President Trump") regarding the January 6th Committee's ("Committee") October 21, 2022, Subpoena Directed to Donald J. Trump, 45th President of the United States ("Subpoena"), service of which we accepted on President Trump's behalf on October 24, 2022. Thank you for taking the time to discuss some of our concerns with the document portion of the Subpoena yesterday. As you know we also have concerns regarding the testimonial request, which we look forward to discussing with you once we have resolved the more pressing document issues.

The Subpoena calls for President Trump to produce documents in response to its demands on November 4, 2022, a mere 11 days after it was served and only two days from now. As we discussed on our call, the Subpoena as written is breathtakingly wide in its scope, seeking documents described in 19 requests that may be in the possession, custody, or control of President Trump as well as his current and former employees, agents, and representatives, including electronic records found in their electronic devices, apps, etc., and documents to which President Trump has "access." For the reasons discussed during our call and laid out in more detail below, the scope and ill-defined nature of many of the terms and commands of the Subpoena's instructions require us to seek clarification from the Committee so that we may respond accordingly.

As the Committee knows based on its investigation to date, and indeed the routine practice of law, strict and complete compliance with the subpoena as written by November 4 is physically impossible as we noted during our call. For this reason, subpoena compliance and discovery law and practice require flexibility and accommodation and, as you know, the typical timeframe for subpoena compliance is often measured in months. During our call, you indicated that the Committee would relax the November 4 deadline to accept a rolling of production of documents, but you emphasized that the Committee was

A CALIFORNIA PROFESSIONAL CORPORATION WITH OFFICES IN
SAN FRANCISCO | NEWPORT BEACH | WASHINGTON, D.C.–ALEXANDRIA | NEWARK–NEW YORK | WEST PALM BEACH

Timothy J. Heaphy
November 2, 2022
Page 2 of 8

running out of time and, for that reason, was not likely to permit much more time for President Trump to produce documents and, in any event, it would not be very flexible with the demanded November 14 deposition date—less than two weeks away. We understand this to mean that the Committee expects compliance with the Subpoena's document requests within that same two-week time frame.

As discussed yesterday, we have questions regarding the document production portion of the Subpoena, among other concerns. Given the Committee's insistence on a dramatically compressed time for President Trump to comply with its demands, we are immediately providing this written explanation of some of our most pressing concerns regarding document issues to expedite their resolution.

The answers to these questions will help ensure the Committee does not transgress the limits of Congress' authority at the expense of the institution of the Presidency. As the Supreme Court has stated, "Congress and the President have an ongoing institutional relationship as the 'opposite and rival' political branches established by the Constitution. . . . As a result, congressional subpoenas directed at the President differ markedly from congressional subpoenas we have previously reviewed . . . and they bear little resemblance to criminal subpoenas issued to the President in the course of a specific case." *Trump v. Mazars USA, LLP,* 140 S.Ct. 2019, 2033-2034 (2020) (citations omitted). "Without limits on its subpoena powers, Congress could 'exert an imperious control' over the Executive Branch and aggrandize itself at the President's expense, just as the Framers' feared." *Id*. at 2034 (quoting The Federalist No. 71, at 484 (A. Hamilton)).

Further, the answers to these questions are essential if we are to assess the extent of the legal obligations the Committee intends for its Subpoena to impose on our client so that we may reasonably respond to it. Finally, your answers are necessary if we are to facilitate a practical response considering the Committee's stated urgency and priorities, consistent with the extent of President Trump's actual obligations and the clarified scope of the Subpoena.

We therefore look forward to your prompt responses to the following questions.

**Clarification on the Scope of the Subpoena**

As currently written, the Subpoena and its cover letter contain contradictory and confusing instructions regarding the Subpoena's scope. On the one hand, the Committee's cover letter states that the Committee seeks "records in [President Trump's] *custody and control that [President Trump is] uniquely positioned* to provide to the Select Committee[.]" Cover Letter at 3 (emphasis added). The Constitution requires this limitation. *See Mazars*, 140 S. Ct. at 2036 ("While we certainly recognize Congress's important interests in obtaining information through appropriate inquiries, those interests are not sufficiently powerful to justify access to the President's personal papers when other sources could provide Congress the information it needs.").

On the other hand, the Subpoena's Definitions and Instructions state that President Trump must "produce all responsive documents, regardless of classification level, that are in [his] possession, custody, or control, *whether held by [President Trump] or [President Trump's] past or present agents, employees, and representatives acting on [President Trump's] behalf*," including "*all documents that [President Trump] ha[s] a legal right to obtain, that [President Trump] ha[s] a right to copy, or to which [President*

A CALIFORNIA PROFESSIONAL CORPORATION WITH OFFICES IN
SAN FRANCISCO | NEWPORT BEACH | WASHINGTON, D.C. METRO–ALEXANDRIA | NEWARK–NEW YORK | WEST PALM BEACH

Timothy J. Heaphy
November 2, 2022
Page 3 of 8

*Trump] ha[s] access*, as well as documents that [President Trump] ha[s] placed in the temporary possession, custody, or control of any third party." Document Production Definitions and Instructions ("Definitions and Instructions"), Instruction 1 (emphasis added).

This language is contradictory and confusing. The asserted reach to documents that may be held by President Trump's current and former agents, employees, and representatives contradicts the scope description that seeks documents in President Trump's custody and control that he is *uniquely* positioned to provide. More importantly, to the extent that documents are held by persons or entities other than President Trump, they have either already been provided to the Committee by such third parties or *could* have been obtained by the Committee pursuant to subpoenas directed to those third parties. Either way, the Committee's attempt to obtain them directly by subpoenaing them from President Trump is a clear violation of the Supreme Court's admonition in *Mazars* that Congress cannot seek from the President documents that it "could" obtain from other sources. 140 S.Ct. at 2036.

Please explain if the Committee's position is that it need not comply with *Mazars*, or confirm that the Committee is withdrawing any demand for production of documents not *uniquely* in the possession of President Trump. Even if the Committee is willing to restrain the scope of the Subpoena in this way, we welcome the Committee's view on how President Trump can know what the Committee already has, or can obtain, from others so that the Committee can comply within the constitutional limits described in *Mazars*. Or is it the Committee's position that President Trump should control the scope of the subpoena by speculating what the Committee may have, or could obtain, from other persons? And what would be the result if he is mistaken?

Even if the Committee's expansive scope instructions did not violate *Mazars*, they raise a number of practical problems we must address. President Trump can neither know who the Committee considers to be President Trump's "past or present agents, employees, and representatives," know what documents those persons may have, nor compel those persons to provide documents.

And the expansion of scope in Instruction 1 to documents President Trump may have a legal right to copy or a right to "access" similarly conflicts with the scope of both the cover letter and the Schedule's preamble and, more importantly, with *Mazars'* limitation to documents not available from other sources. This expansion is also vague and overly broad. This concern is heightened considering the Subpoena delves into social media. The Subpoena's preamble excludes "public media" but does not define this term. Can the Committee clarify what it means by extending the scope of the Subpoena to documents President Trump can access, as distinguished from documents in his possession, custody, or control?

Moreover, President Trump is associated with various diverse entities that exist as separate legal entities and maintain separate legal structures and that possess their own rights to property and information. That President Trump may arguably have a degree of access in his capacity as a corporate officer or shareholder does, or in some other capacity, does not mean he has a right to produce any such information to a third party, or that the Committee can, simply through a subpoena to President Trump, compel him to search all entities with which he is in some way affiliated for relevant documents. Further, to require President Trump to search those entities for any documents that may in some way respond to the Subpoena's broadly constructed requests would be a significant undertaking requiring an amount of

Timothy J. Heaphy
November 2, 2022
Page 4 of 8

time which the Committee has stated it does not have because of the late hour of its Subpoena. Each of these concerns is exacerbated by this short time frame.

For these reasons, we need the Committee to clarify what exactly the subpoena requests President Trump to produce.

### The Subpoena's Breadth and Clarity

#### Instruction 9

Instruction 9 states that "[t]he fact that any other person or entity also possesses non-identical or identical copies of the same documents shall not be a basis to withhold any information." Definitions and Instructions, Instruction 9. We recognize this may be standard language the Committee has used in subpoenas to other persons but in a subpoena to a President this instruction plainly violates *Mazars*. It also contradicts the cover letter's emphasis on President Trump's production of uniquely held documents.

As noted above, "courts should carefully assess whether the asserted legislative purpose warrants the significant step of involving the President and his papers." *Mazars,* 140 S.Ct. at 2035. "While we certainly recognize Congress's important interests in obtaining information through appropriate inquiries, those interests are not sufficiently powerful to justify access to the President's personal papers when other sources could provide Congress the information it needs." *Id*. at 2036.

Here, the Committee has gathered significant documents and information. Indeed, as the Subpoena notes, the Committee has already spoken to 1000 witnesses and obtained over a million pages of documents. At the recent October 21, 2022, Committee hearing, Chairman Thompson attested "I've served in Congress a long time. I can tell you it's tough for any Congressional investigation to obtain evidence like what we've received, least of all such a detailed view into a president's inner circle."

It is obvious that there are documents requested in the Subpoena that the Committee already has, or could obtain from others. This is especially true with respect to the communications between numerous persons and President Trump that the Subpoena requests. What process can be established to determine whether the Committee already has, or can obtain from others, documents that the Subpoena is asking the President to produce? What steps, if any, has the Committee already taken to ensure that the Subpoena is not seeking (a) documents already obtained from another source or (b) documents that the Committee could subpoena from another source rather than from President Trump?

#### Instruction 15

Instruction 15 is not a request for an existing document, but rather a request for testimony or new information about the location of documents not in President Trump's possession, custody, or control. Instruction 15 further seeks an explanation of the circumstances surrounding those documents, and testimony about whoever possesses any such documents. This reads as an interrogatory or a deposition topic, but not a document request. We believe this instruction should be stricken.

Timothy J. Heaphy
November 2, 2022
Page 5 of 8

### Instruction 16

Instruction 16 expands the scope of the Subpoena to documents not identified in it. Instruction 16 requires the production of documents even if the "descriptive detail[s]" are inaccurate. There is also no definition of "descriptive detail," which further obscures the meaning and impact of this instruction. In effect, this instruction appears to require President Trump to produce what he may *think* you are asking for even if it is different from what the Subpoena clearly asks for. We believe this instruction should be stricken.

### Definition 7

Definition 7 seeks to define "related to" or "referring or relating to." These terms—"related to" or "referring or relating to"— appear in requests 2-8, 10-13 and 15-18. Definition 7 contains a long and internally inconsistent list of terms that render these phrases, and all the requests to which they apply, vague and overbroad. We request that the Committee provide a more clear and thus more meaningful definition for "related to" and "referring or relating to."

## Questions on Specific Requests

### Request 1

Request 1 appears to call for communications regardless of their relevance to the Committee's investigation. Can the Committee provide a subject matter qualifier to this request to ensure it calls for documents within the Committee's mandate and respecting President Trump's rights and privileges? Further, this request seeks records of Presidential communications that are in the government's possession, and in particular the possession of the Executive Branch. It also seeks records, if any, that would be in the possession of other persons and records that the Committee has likely already obtained. To the extent the request seeks records in the possession of others, the Committee should obtain them from those other parties before seeking them from President Trump. And to the extent the Committee already has records, it should limit its request by identifying the records it already has that the President need not try to locate and produce. See, *supra*, comments on Instruction 9.

### Request 2

If we understand this request, it is seeking evidence of *any* call or communication between a member of Congress and a President in his final three weeks in office that referred or related *in any way* to the election.  To the extent it seeks records of calls made by others, the President will not have custody of those records, and to the extent it calls for records in the custody of the Executive Branch or the Committee, the President should not be required to produce duplicate records. We should set up a process by which the Committee can identify the relevant records it already possesses and to otherwise narrow this request to relevant communications, if any, uniquely in President Trump's possession.

A CALIFORNIA PROFESSIONAL CORPORATION WITH OFFICES IN
SAN FRANCISCO | NEWPORT BEACH | WASHINGTON, D.C. METRO–ALEXANDRIA | NEWARK–NEW YORK | WEST PALM BEACH

Timothy J. Heaphy
November 2, 2022
Page 6 of 8

**Request 3**

Does Request 3 seeking "[a]ll photographs and video recordings taken on January 6, 2021" regarding specified topics mean photographs and video recordings taken *by President Trump*, or by anyone? While the Schedule's preamble excludes copies of "public media accounts," that term is not defined. And Instruction 1 requires President Trump to produce all documents "to which [he] ha[s] access." But if not limited to documents uniquely in President Trump's possession, this request appears to be overbroad. Does the Committee envision President Trump, for example, scouring his Truth Social account for any photos shown to him? Do we agree that President Trump does not need to produce anything he posted to social media? We believe this is required by *Mazars* because the Committee can readily obtain such publicly available materials by simply downloading them itself from the public Internet.  The contours of this request need clarifying and, potentially, limiting.

**Request 6**

As with Request 3, does Request 6 require all documents within President Trump's *possession* regarding "anyone who assembled in Washington, D.C., on January 6th for the purposes related to the 2020 presidential election, the joint session of Congress, or the rally on the Ellipse," as opposed to any documents "to which [President Trump] ha[s] *access*," as Instruction 1 would suggest? If not limited to documents uniquely in President Trump's possession, the request appears significantly overbroad.

**Request 8**

Request 8 demands social media posts from November 3, 2020, to January 6, 2021, regarding the Vice President, the joint sessions of Congress, or the Ellipse rally on January 6, 2021. Although the Schedule's preamble excludes "public media accounts," it does not define this term. The Committee has ready access to social media posts by President Trump, which are not uniquely in his possession. If it is the Committee's position that this request includes social media "to which [President Trump] ha[s] *access*"—as in whatever social media platforms put in his feeds—that would be impractical and unduly burdensome. This request requires clarification.

**Request 11**

Request 11 is unclear. It could be seeking any communications with Representative Scott Perry. It could instead be seeking any communications with Representative Scott Perry regarding "presidential electoral votes." It further could be seeking any communications with Representative Scott Perry regarding (1) "presidential electoral votes," (2) "planning for January 6, 2021, or the joint session on that day," (3) "changes of personnel at the Department of Justice," or (4) "any other topic related to an effort to alter the results of the November 3, 2022, presidential election."

As to communications with "any other Member of Congress," it could mean "any other member of Congress" regarding "presidential electoral votes," along with documents regarding the "planning for

Timothy J. Heaphy
November 2, 2022
Page 7 of 8

January 6, 2021, or the joint session on that day," "changes of personnel at the Department of Justice," or "any other topic related to an effort to alter the results of the November 3, 2022, presidential election." Or instead it could mean "any other member of Congress" regarding (1) "presidential electoral votes," (2) "planning for January 6, 2021, or the joint session on that day," (3) "changes of personnel at the Department of Justice," or (4) "any other topic related to an effort to alter the results of the November 3, 2022, presidential election." Please clarify.

**Request 13**

Request 13 is unclear. Does it seek all filings in every post-election lawsuit, as well as all communications related to those suits? If so, this is overbroad and unduly burdensome, and calls for records you can obtain from public dockets and other sources, which is a violation of *Mazars*. It would also likely encompass records squarely protected from disclosure by the attorney client privilege and the work product doctrine.

**Request 14**

Request 14 seeks communications of President Trump with 13 separate people, including attorneys, regardless of whether they are relevant to the Committee's mandate or any particular subject, if they occurred between November 3, 2020, and January 20, 2021. Is the Committee willing to narrow the request to any particular subject matter to conform to the Committee's mandate? Furthermore, has the Committee obtained, or sought to obtain, such communications from those individuals as *Mazars* requires?

**Request 17**

Request No. 17 seeks "All documents, including communications . . . relating or referring in any way to fundraising efforts based on claims of election fraud or a stolen election." The request is vague and overbroad because it does not indicate whose fundraising efforts it pertains to. As you know, numerous entities fundraised in connection with the 2020 election, including many over which President Trump had no control. With the addition of the expansive "relating or referring in any way" clause, the potential scope of this request is extensive. Can the Committee clarify whose fundraising efforts it is investigating?

**Request 19**

This request seeks "information sufficient to identify every telephone or other communications device you used from November 3, 2020, to January 20, 2021." Is the request limited to personal devices owned by the President, and not government devices over which the Executive Branch has control and records?

*       *       *       *

Resolving questions like those posed here are a time-consuming but routine part of subpoena and discovery practice, which require active engagement between parties and counsel. Even once these

Timothy J. Heaphy
November 2, 2022
Page 8 of 8

questions are resolved, collecting, reviewing, and producing documents takes time under normal circumstances. But a Congressional subpoena to a President presents decidedly abnormal issues.  The Committee's time constraints, which are not within the control of, or caused by, President Trump, do not make any of these questions easier to answer. By immediately sharing these concerns with you, we hope that the legal and practical challenges presented by the Committee's Subpoena will be capable of resolution by mutual agreement.

   While these are not our only concerns, resolving them would be a step forward. Thank you for your attention to these questions and concerns. We look forward to your response.

                    Sincerely,

                    David A. Warrington