

2121 Eisenhower Avenue, Suite 402
Alexandria, VA 22314

David A. Warrington
Phone: 703.574.1206
DWarrington@dhillonlaw.com

November 9, 2022

**VIA EMAIL**
Timothy J. Heaphy
Chief Investigative Counsel
January 6th Committee
U.S. House of Representatives
202-309-5396 (cell)
Tim.Heaphy@mail.house.gov

Re:   **Objections to the Subpoena to Donald J. Trump, 45th President of the United States and Responses to the Committee's November 4, 2022 Letter**

Dear Mr. Heaphy:

As you know, our law firm represents President Donald J. Trump ("President Trump") regarding the January 6th Committee's ("Committee") October 21, 2022, Subpoena Directed to Donald J. Trump, 45th President of the United States ("the Subpoena"). This letter follows the November 1, 2022, call our office had with yours, our November 2, 2022, letter to you seeking clarity regarding certain aspects of the Subpoena, and your November 4, 2022, letter. First, this letter provides a response to the Committee's November 4, 2022, letter. Second, it provides objections that apply to the Subpoena generally. And third, it provides objections to individual Subpoena requests.

We look forward to continuing to work with you to find ways to resolve the objections set forth in this letter. Any solution should take into account the Committee's desire for information and President Trump's concerns regarding this highly unusual intrusion by Congress upon the interests of the Executive Branch and the practical difficulties posed by the Committee's eleventh-hour subpoena. Although these issues remain open for discussion, President Trump is voluntarily providing information to the Committee today in response to its requests without waiving any of his objections. The Committee could obtain information in a manner consistent with our Constitution as discussed below. Nevertheless, we set forth these formal objections to reiterate that there can be no claim that President Trump has waived any of them.

### RESPONSES TO THE COMMITTEE'S NOVEMBER 4, 2022 LETTER

<u>Documents</u>

In its November 4 Letter, the Committee requested President Trump answer only request numbers 1 and 19 in the Subpoena by November 9, and then only with documents in his possession relating to nongovernmental devices.

Timothy J. Heaphy
November 4, 2022
Page 2 of 24

Request 1 seeks "All records of any telephone calls, text messages, or communications sent through Signal or any other means, placed or received by [Mr. Trump] or at [Mr. Trump's] direction on January 6, 2021, including records of any calls [Mr. Trump] joined as an active or passive participant. You specified that he is not obligated to produce "any information about government-owned devices." Notwithstanding and without waiver of his objections to this request, as a sign of good faith and as a courtesy to the Committee, President Trump has voluntarily directed a reasonable search for documents in his possession. The search found no documents responsive to this request.

Request 19 seeks "Information sufficient to identify every telephone or other communications device [Mr. Trump] used between November 3, 2020, and January 20, 2021." You indicated that this request also did not require production of "any information about government-owned devices" To the extent that this request seeks documents, rather than information untethered to particular documents (i.e. testimony), President Trump responds as follows:  Notwithstanding and without waiver of his objections to this request, as a sign of good faith and as a courtesy to the Committee President Trump has voluntarily directed a reasonable search of documents in his possession. The search found no documents responsive to this request.  To the extent that Request 19 seeks non-documentary information (i.e., testimony), President Trump responds below.

Accordingly, President Trump has responded fully and in good faith to the Committee's requests for documents as set forth in its November 4, 2022 Letter.

<u>Testimony</u>

As explained in more detail below, President Trump has absolute immunity from being compelled to testify before the Committee.  However, if the Committee has questions that it requests he answer, it may propound them in writing.  President Trump will then consider whether providing responses, in any form, would be appropriate under all the circumstances, taking into account such considerations as, without limitation, whether each question furthers a legitimate legislative purpose or impermissibly intrudes upon the prerogatives of the Executive Branch.

## GENERAL OBJECTIONS TO THE SUBPOENA

### The Time Frame for Production of Records is Unreasonable

The Subpoena as written called for President Trump to produce documents in response to its demands on November 4, 2022, just 11 days after it was served. As we discussed on our call, the Subpoena as written is breathtaking in its scope, seeking documents, described in 19 requests, that may be in the possession, custody, or control of President Trump as well as his current and former employees, agents, and representatives, including electronic records found in their electronic devices, apps, etc., and documents to which President Trump has "access."

Subpoena compliance and discovery law and practice require flexibility and accommodation. As the Committee knows based on its investigation to date, the routine practice of law, and as stated during our call, strict and complete compliance with the subpoena as written by November 4 was physically impossible the Subpoena sought documents in a matter of days. As you know, the typical timeframe for

Timothy J. Heaphy
November 4, 2022
Page 3 of 24

subpoena compliance is often measured in months.  In our November 1 call and our November 2 letter we noted that any due diligence regarding any response to the Subpoena would—depending on the clarified scope of the Subpoena—require additional time.  We appreciate the Committee's tacit recognition that the Subpoena's proposed timeframe was unrealistic, as embodied in its request that President Trump limit his initial document response to the two requests the Committee asked to be answered by November 9, 2022, which are addressed above.  The Committee has not otherwise addressed the concerns raised in our call or previous letter.  We therefore reiterate our request for the Committee to address those concerns and invite the Committee to further discuss those issues so that we may respond accordingly.

In addition to the concerns raised in our prior discussions, President Trump asserts the following objections to the Subpoena's requests.

**President Trump Has Absolute Testimonial Immunity Consistent with the Constitutional Separation of Powers**

As the Supreme Court has stated, "Congress and the President have an ongoing institutional relationship as the 'opposite and rival' political branches established by the Constitution. . . . As a result, congressional subpoenas directed at the President differ markedly from congressional subpoenas we have previously reviewed . . . and they bear little resemblance to criminal subpoenas issued to the President in the course of a specific case."  *Trump, v. Mazars USA, LLP*, 140 S.Ct. 2019, 2033-34 (2020) (citations omitted). "Without limits on its subpoena powers, Congress could 'exert an imperious control' over the Executive Branch and aggrandize itself at the President's expense, just as the Framers' feared."  *Id.* at 2034 (quoting The Federalist No. 71, at 484 (A. Hamilton)).

"Since the 1970s, [the Office of Legal Counsel in the Department of Justice] has consistently advised that 'the President . . . [is] absolutely immune from testimonial compulsion by a Congressional committee' on matters related to their official duties."  *Testimonial Immunity Before Congress of the Former Counsel to the President*, 2019 WL 2315338 at *2 (O.L.C. May 20, 2019) ("*Testimonial Immunity Before Congress*") (quoting Memorandum for All Heads of Offices, Divisions, Bureaus and Boards of the Department of Justice, from John M. Harmon, Acting Assistant Attorney General, Office of Legal Counsel, *Re: Executive Privilege* at 5 (May 23, 1977) ("Harmon Memorandum"); *see also* Memorandum for John D. Ehrlichman, Assistant to the President for Domestic Affairs, from William H. Rehnquist, Assistant Attorney General, Office of Legal Counsel, *Re: Power of Congressional Committee to Compel Appearance or Testimony of 'White House Staff'* at 7 (Feb. 5, 1971) ("Rehnquist Memorandum") ("The President . . . should be deemed absolutely immune from testimonial compulsion by a congressional committee.").

The Office of Legal Counsel "has endorsed that legal principle on more than a dozen occasions, over the course of the last eight presidential administrations" prior to the Biden Administration.  *Id.* (citing *Immunity of the Assistant to the President*, 38 Op. O.L.C. at *1; Letter for Fred F. Fielding, Counsel to the President, from Steven G. Bradbury, Principal Deputy Assistant Attorney General, Office of Legal Counsel at 1–2 (Aug. 1, 2007) ("Bradbury Letter"); *Immunity of the Former Counsel*, 31 Op. O.L.C. at 191; Reno Opinion, 23 Op. O.L.C. at 4; *Immunity of the Counsel to the President from Compelled Congressional Testimony*, 20 Op. O.L.C. 308, 308 (1996) ("Immunity of the Counsel to the President "); Letter for Jack Brooks, Chairman, Committee on the Judiciary, U.S. House of Representatives, from

Timothy J. Heaphy
November 4, 2022
Page 4 of 24

Nicholas E. Calio, Assistant to the President for Legislative Affairs at 1 (June 16, 1992) ("Calio Letter"); Memorandum for Edward C. Schmults, Deputy Attorney General, from Theodore B. Olson, Assistant Attorney General, Office of Legal Counsel at 2 (July 29, 1982) ("Olson Memorandum"); Memorandum for Rudolph W. Giuliani, Associate Attorney General, from Theodore B. Olson, Assistant Attorney General, Office of Legal Counsel, *Re: Congressional Demand for Deposition of Counsel to the President Fred F. Fielding* at 2 (July 23, 1982) ("Congressional Demand for Deposition of Counsel "); Memorandum for Fred F. Fielding, Counsel to the President, from Theodore B. Olson, Assistant Attorney General, Office of Legal Counsel, *Re: Congressional Testimony by Presidential Assistants* at 1 (Apr. 14, 1981); Memorandum for Margaret McKenna, Deputy Counsel to the President, from John M. Harmon, Assistant Attorney General, Office of Legal Counsel, *Re: Dual-Purpose Presidential Advisers* at 5 (Aug. 11, 1977); Harmon Memorandum at 5; Letter to Phillip E. Areeda, Counsel to the President, from Antonin Scalia, Assistant Attorney General, Office of Legal Counsel (Sept. 25, 1974) (enclosing a memorandum, hereinafter "Scalia Memorandum"); Memorandum for John W. Dean III, Counsel to the President, from Roger C. Cramton, Assistant Attorney General, Office of Legal Counsel, *Re: Availability of Executive Privilege Where Congressional Committee Seeks Testimony of Former White House Official on Advice Given President on Official Matters* at 6 (Dec. 21, 1972) ("Cramton Memorandum"); Memorandum for John W. Dean III, Counsel to the President, from Ralph E. Erickson, Assistant Attorney General, Office of Legal Counsel, *Re: Appearance of Presidential Assistant Peter M. Flanigan Before a Congressional Committee* at 1 (Mar. 15, 1972) ("Erickson Memorandum"); Rehnquist Memorandum at 7.

"The rationale for the immunity is plain.  The President is the head of one of the independent Branches of the federal Government.  If a congressional committee could force the President's appearance, fundamental separation of powers principles – including the President's independence and autonomy from Congress – would be threatened."  *Immunity of Former Counsel to the President from Compelled Congressional Testimony*, 31 U.S. Op. O.L.C. 191, 2007 WL 5038035 at \* 2 (Jul. 10, 2007) ("*Immunity of Former Counsel*").  Put differently, "[t]he President is a separate branch of government.  He may not compel congressmen to appear before him.  As a matter of separation of powers, Congress may not compel him to appear before it."  Memorandum for Edward C. Schmults, Deputy Attorney General, from Theodore B. Olson, Assistant Attorney General, Office of Legal Counsel at 2 (Jul. 29, 1982).  "[A]llowing Congress to subpoena the President to appear and testify would 'promote a perception that the President is subordinate to Congress, contrary to the Constitution's separation of governmental powers into equal and coordinate branches.'"  *Testimonial Immunity Before Congress* at \*3 (quoting *Immunity of the Assistant to the President*, 38 Op. O.L.C. at \*2).  Thus, as Attorney General Janet Reno stated, "requiring the President himself to appear before Congress on matters relating to the performance of his constitutionally assigned executive functions . . . would, in my view, violate the constitutionally mandated separation of powers principles."  *Assertion of Executive Privilege with Respect to Clemency Decisions*, 23 Op. O.L.C. 1, 5 (Sept. 16, 1999) (opinion of Attorney General Janet Reno).

As a practical matter, "[t]here are dozens of congressional committees and subcommittees with the authority to conduct hearings and subpoena witnesses."  *Testimonial Immunity Before Congress* at \*3.  The ability of any one of them – or worse, all of them – to compel the President of the United States to appear and testify "would allow congressional committees to 'wield their compulsory power to attempt to supervise the President's actions, or to harass those advisers in an effort to influence their conduct, retaliate for actions the committee disliked, or embarrass and weaken the President for partisan gain.'"  *Id.* (quoting *Immunity of Assistant to the President*, Op. O.L.C. at \*3).

Timothy J. Heaphy
November 4, 2022
Page 5 of 24

As Attorney General Reno recognized, this immunity 'is absolute and may not be overborne by competing congressional interests." *Assertion of Executive Privilege with Respect to Clemency Decisions*, 23 Op. O.L.C. at 5; *see also Immunity of Former Counsel to the President from Compelled Congressional Testimony*, 2007 WL 5038035 at * 1.

Moreover, testimonial immunity continues to apply after a President has left office.  As President Truman wrote in response to a subpoena from the U.S. House of Representatives Committee on Un-American Activities:

> It must be obvious to you that if the doctrine of separation of powers and the independence of the Presidency is to have any validity at all, it must be equally applicable to a President after his term of office has expired when he is sought to be examined with respect to any acts occurring while he was President.  The doctrine would be shattered, and the President, contrary to our fundamental theory of Constitutional Government, would become a mere arm of the Legislative Branch of the Government if he would feel during his term of office that his every act might be subject to official inquiry and possible distortion for political purposes."

Letter from the Honorable Harry S. Truman to the Honorable Harold H. Velde (Nov. 11, 1953), https://www.trumanlibrary.gov/library/research-files/harry-s-truman-harold-h-velde?documentid=NA&pagenumber=2. Importantly, former President Truman's letter was no academic exercise; it was his explanation for his absolute refusal to appear to testify in response to a subpoena issued by the House Un-American Activities Committee.  In justifying his decision to the American public, President Truman further explained it "is just as important to the independence of the Executive that the actions of the President should not be subjected to questioning by the Congress after he has completed his term of office as that his actions should not be questioned while he is serving as President."  *Text of Address by Truman Explaining to Nation His Actions in the White Case*, N.Y. Times at 26 (Nov. 17, 1953).

Consistent with President Truman's words and deeds, the Department of Justice has consistently advised that testimonial immunity applies to former Presidents and their senior advisors.  *See Testimonial Immunity Before Congress* at *10 ("[the Department of Justice] ha[s] recognized that testimonial immunity continues after the tenure of a particular Counsel to the President"); *Immunity of Former Counsel* at *2 ("Separation of powers principles dictate that former Presidents and former senior presidential advisers remain immune from compelled congressional testimony about official matters that occurred during their times as President or senior presidential advisers.").  *See also United States v. Johnson*, 383 U.S. 169 (1966) (applying the speech and debate clause to a former member of Congress).

And, as you know, the Department of Justice recently reaffirmed in open court its continued adherence to the principle that a former President is absolutely immune from compelled Congressional testimony.  *See Meadows v. Pelosi, et al.,* CV No. 1:21-3217 CJN (D.D.C. Sept. 7, 2022) Tr. at 45:14-46:14.

Timothy J. Heaphy
November 4, 2022
Page 6 of 24

The Committee has purported to subpoena President Trump to appear at a deposition and testify regarding his actions as President of the United States. The Subpoena is addressed to "Donald J. Trump, 45th President of the United States" (emphasis added). In the second bullet, the Subpoena's cover letter refers directly to alleged actions taken by President Trump as President: "Attempting to corrupt the Department of Justice, including by soliciting and enlisting Department officials to make false statements and aid your effort to overturn the presidential election." Cover Letter at 1. The cover letter continues: "You took all of these actions . . . despite your obligation as President to ensure that the laws of our nation are faithfully executed." *Id.* at 2 (emphasis added). This expressly frames the investigation as an inquiry into his conduct as President.

Further, the cover letter emphasizes that the Committee is scrutinizing President Trump's official actions: "you were at the center of the first and only effort by any U.S. President to overturn an election and obstruct the peaceful transition of power, ultimately culminating in a bloody attack on our own Capitol and on the Congress itself." *Id.* (emphasis added). The letter again leaves no doubt that the Committee's investigation is squarely aimed at President Trump's official acts as the Chief Executive when it states: "The evidence demonstrates that you knew this activity was illegal and unconstitutional . . . ," *id.*, because only a government official's actions can be unconstitutional. Finally, the Letter leaves no doubt that it is directed at President Trump's actions as President when it claims disingenuously that its work was in fact in furtherance of "legislative recommendations intended to provide further assurance that no future President" would commit the alleged actions you ascribe to President Trump. *Id.* (emphasis added).

As a co-equal branch of government, Congress—and particularly a partisan committee thereof—lacks authority under the Constitution to compel President Trump to testify about his time in office. President Trump has, what Attorney General Reno—like many others in the Department of Justice before and since—have characterized as "absolute" testimonial immunity.

**The Subpoena Violates Executive Privilege**

Executive privilege allows a President to protect "documents or other materials that reflect presidential decisionmaking and deliberations and that the President believes should remain confidential" from disclosure. *In re Sealed Case*, 121 F.3d 729, 744 (D.C. Cir. 1997). Such privilege is "fundamental to the operation of Government and inextricably rooted in the separation of powers under the Constitution." *United States v. Nixon*, 418 U.S. 683, 708 (1974). "A President and those who assist him must be free to explore alternatives in the process of shaping policies and making decisions and to do so in a way many would be unwilling to express except privately." *Id.* To be sure, even the Committee's cover letter acknowledges that the Supreme Court has held that "[f]ormer Presidents retain the limited ability to assert executive privilege[.]" Cover Letter at 3.

The Subpoena seeks to depose President Trump about events that occurred while he was President, and in his capacity as President. It expressly seeks information from President Trump about conversations and deliberations that occurred while he was President and concerned his exercise of Article II authority. The Subpoena seeks documents that plainly reflect Presidential decision-making and deliberations including, but not limited to, discussions with subordinate officials in the Department of Justice concerning the 2020 election and conversations with members of Congress regarding pending governmental business. At this stage, neither President Trump nor his counsel have, in the very short time

Timothy J. Heaphy
November 4, 2022
Page 7 of 24

available to us, had an opportunity to determine whether particular documents, information, or other materials otherwise responsive to the Subpoena exist as to which the President intends to assert executive privilege. Accordingly, President Trump objects to the Subpoena because it invades the executive privilege.

**The Subpoena is Outside the Committee's Legislative Purpose**

After a failed attempt to establish a bipartisan commission, on June 28, 2021, Speaker Pelosi introduced H. Res. 503, "Establishing the Select Committee to Investigate the January 6th Attack on the United States Capitol." Two days later, the House passed H. Res. 503 on a near party-line vote of 222 yeas and 190 nays.

H. Res. 503 sets forth the "purposes" of the Committee:

    a.  To investigate and report upon the facts, circumstances, and causes relating to the January 6, 2021, domestic terrorist attack upon the United States Capitol Complex (hereafter referred to as the "domestic terrorist attack on the Capitol") and relating to the interference with the peaceful transfer of power, including facts and causes relating to the preparedness and response of the United States Capitol Police and other Federal, State, and local law enforcement agencies in the National Capital Region and other instrumentalities of government, as well as the influencing factors that fomented such an attack on American representative democracy while engaged in a constitutional process.

    b.  To examine and evaluate evidence developed by relevant Federal, State, and local governmental agencies regarding the facts and circumstances surrounding the domestic terrorist attack on the Capitol and targeted violence and domestic terrorism relevant to such terrorist attack.

    c.  To build upon the investigations of other entities and avoid unnecessary duplication of efforts by reviewing the investigations, findings, conclusions, and recommendations of other executive branch, congressional, or independent bipartisan or nonpartisan commission investigations into the domestic terrorist attack on the Capitol, including investigations into influencing factors related to such attack.

On September 19, 2022, Committee members Congresswoman Lofgren and Congresswoman Cheney introduced House Resolution 8873, Presidential Election Reform Act ("H.R. 8873"), to amend the Electoral Count Act. Representatives Lofgren and Cheney made clear that H.R. 8873 is an outgrowth of the Committee's work, stating in the *Wall Street Journal* "The committee will have more to say in the months to come about the full extent of President Trump's plans to overturn the 2020 election, but we also have an obligation to recommend legislation to make sure such an attack never happens again. . . . To address this prospect, this week we will propose reforms to the Electoral Count Act to protect the rule of law and ensure that future efforts to attack the integrity of presidential elections can't succeed." On September 21, 2022, H.R. 8873 passed the House of Representatives.

Timothy J. Heaphy
November 4, 2022
Page 8 of 24

At the October 21, 2022, hearing of the Committee, Chairman Thompson explained the purported need to subpoena President Trump as follows:

> [T]he need for this committee to hear from Donald Trump goes beyond our fact finding.  This is a question about accountability to the American people.  He must be accountable.  He is required to answer for his actions.  He's required to answer to those police officers who put their lives and bodies on the line to defend our democracy.

> He's required to answer to those millions of Americans who votes he wanted to throw out as part of his scheme to remain in power.  And whatever is underway to ensure this accountability under the law, this committee will demand a full accounting to every American person of the events of January 6th. So, it's our obligation to seek Donald Trump's testimony.

During the October 21, 2022, hearing, Congressman Kinzinger specifically referenced his policy disagreements with President Trump's orders pursuant to his authority as commander in chief of the armed forces, stating "President Trump issued an order for large-scale US troop withdrawals.   He disregarded concerns about the consequences for fragile governments on the front lines of the fight against ISIS and Al-Qaeda terrorists."

Congress has no freestanding power to investigate and issue subpoenas. Instead, its investigative powers are ancillary to its legislative authority. *Mazars*, 140 S.Ct. at 2031. Because of this tie between the investigative and legislative powers, Congress may only issue subpoenas that serve a valid legislative purpose.

The legislative purpose inquiry analyzes whether a particular subpoena serves a valid purpose, not whether an investigation as a whole serves a valid purpose. *See id*. at 2031. Particularly where a subpoena involves the President, "courts should be attentive to the nature of the evidence offered by Congress to establish that a subpoena advances a valid legislative purpose. The more detailed and substantial the evidence of Congress's legislative purpose, the better. . . . That is particularly true when Congress contemplates legislation that raises sensitive constitutional issues, such as legislation concerning the presidency." *Mazars*, 140 S.Ct. at 2036.  In cases involving legislation concerning the presidency, "it is 'impossible' to conclude that a subpoena is designed to advance a valid legislative purpose unless Congress adequately identifies its aims and explains why the President's information will advance its consideration of the possible legislation." *Id*. (citations omitted). "Vague" or "loosely worded" evidence of Congressional purpose is insufficient. *Id.* (quoting *Watkins v. United States*, 354 U.S. 178, 201, 205 (1957)).

The Committee's purported legislative purpose for subpoenaing President Trump is to "consider[] multiple legislative recommendations intended to provide further assurance that no future President could succeed at anything remotely similar to the unlawful steps you took to overturn the election" (emphasis added). This is a vague and loosely worded purpose.  Moreover, to the extent it is discernable, the claimed purpose is to directly regulate future Presidents.

Timothy J. Heaphy
November 4, 2022
Page 9 of 24

The facts and circumstances of the Subpoena confirm that the Committee has virtually abandoned any pretense of a legislative investigation. Two members of the Committee have already proposed – and the House has already passed – legislation in response to address its stated purpose.   At this late date, with an election just past and holiday recess looming, the Committee has suggested it will have no further hearings, but has yet to draft any further legislative recommendations or hold any hearings to solicit or discuss proposals, or even identify a single proposed reform, much less solicit testimony from any witness about any potential reforms.  At no point does the Committee describe how the testimony of President Trump is necessary to further this purported purpose.

Instead, the Committee provides ample evidence that its purported legislative purpose is pretextual, and that its true purpose is non-legislative. From its inception to this day, the Committee has instead pursued a quasi-criminal inquest, abusing its subpoena power to collect information for the Department of Justice, to which it has already provided evidence to facilitate the prosecution of individuals, including President Trump.

The Subpoena itself highlights that the requested deposition "will be led by the professional staff of the Select Committee – including multiple former federal prosecutors – as well as Members." The Committee makes no effort to explain why prosecutors are relevant or necessary to elicit information for legislative drafting.  Their potential value for eliciting information for punitive purposes, including potential criminal referrals, would be obvious even if the Committee's Members and Speaker Pelosi had not explicitly stated that their purpose in issuing the Subpoena was to punish, not legislate.

Holding President Trump "accountable" is not a legislative purpose. Holding an individual "accountable" is a facially punitive purpose. At the October 21, 2022, hearing Congresswoman Cheney raised the prospect of criminal referrals to the Department of Justice multiple times and noted "[w]e have sufficient information to consider criminal referrals for multiple individuals and to recommend a range of legislative proposals to guard against another January 6th."

"Congress may not issue a subpoena for the purpose of 'law enforcement,' because 'those powers are assigned under our Constitution to the Executive and the Judiciary.'" *Mazars*, 140 S.Ct. at 2032 (quoting *Quinn v. United States*, 349 U.S. 155, 161 (1955)). Conducting federal investigations to facilitate referrals for prosecution to the Department of Justice is not a legislative purpose. And while Article 1, Section 2 of the Constitution grants Congress the power of impeachment, the Committee's investigation of President Trump is not being conducted pursuant to that power. As the Committee knows, President Trump was already acquitted by a vote of the Senate following the House's initiation of an impeachment proceeding.  The Committee's investigation, insofar as it is attempting to replicate the power and purpose of an impeachment proceeding, is acting outside of its legislative powers.

The subpoena to President Trump therefore lacks a basic valid legislative purpose, let alone a legislative purpose sufficiently detailed to justify an unprecedented intrusion on the Presidency by a clique of Congressmen hand selected by the Speaker of the House who is also a leading member of the opposing party.  Accordingly, it is invalid.

Timothy J. Heaphy
November 4, 2022
Page 10 of 24

**The Subpoena Seeks Information from President Trump that Could be Obtained from Other Sources**

At the October 21, 2022, hearing of the Committee, Chairman Thompson stated, "I've served in Congress a long time I can tell you it's tough for any Congressional investigation to obtain evidence like what we've received, least of all such a detailed view into a president's inner circle." Indeed, the Committee claims it interviewed or deposed 1000 witnesses and received over 1 million pages of documents.

"[C]ourts should carefully assess whether the asserted legislative purpose warrants the significant step of involving the President and his papers." *Mazars*, 140 S.Ct. at 2035. "While we certainly recognize Congress's important interests in obtaining information through appropriate inquiries, those interests are not sufficiently powerful to justify access to the President's personal papers when other sources could provide Congress the information it needs." *Id*. at 2036. Therefore, "Congress may not rely on the President's information if other sources could reasonably provide Congress the information it needs in light of its particularly legislative objectives." *Id*. at 2035-36.

By its own admission, other sources can and, indeed, have provided the Committee with the information it needs to pursue its purported legislative purpose. According to the Subpoena, the Committee has "interviewed more than a thousand witnesses, reviewed over a million documents, conducted public hearings, and vindicated [its] rights in court." The Subpoena further states "[a]s demonstrated in our hearings, we have assembled overwhelming evidence, including from dozens of your former staff, that you personally orchestrated and oversaw a multi-part effort to overturn the 2020 presidential election and to obstruct the peaceful transfer of power."

During the October 21, 2022, hearing Congresswoman Cheney stated "[o]ur committee now has sufficient information to answer many of the critical questions posed by Congress at the outset." Moreover, two committee members already proposed, and the House already passed, legislation directed at fixing the issue at the center of the Committee's legislative purpose, H.R. 8873.

According to Congresswoman Cheney, H.R. 8873 would "help ensure that no future plots to overturn an election can succeed." By the Committee's own admission, therefore, it has nearly unprecedented levels of information and insight into the president's inner circle that is sufficient to "to answer many of the critical questions posed by Congress at the outset" and influence the drafting and passage of legislation.

Nor does it appear that the Committee has made any effort to comport with *Mazars'* requirement that it confine its subpoena to documents that it has neither already obtained, nor could obtain, from other sources in drafting its Subpoena. To the contrary, it is readily apparent on the face of the broadly drawn document requests in the Subpoena that Congress seeks materials and information that are duplicative and/or obtainable from third parties.

The Committee has provided no justification or explanation (because it cannot) for how *the President's* documents are necessary for the Committee's claimed legislative purpose above and beyond the information already received from "thousands" of other witnesses and "over a million documents,"

Case 9:22-cv-81758-XXXX   Document 1-4   Entered on FLSD Docket 11/11/2022   Page 11 of 24

Timothy J. Heaphy
November 4, 2022
Page 11 of 24

including extensive government records. Even if the Committee had a valid legislative purpose in issuing its subpoena, it plainly fails to satisfy the requirement in *Mazars* that the President's papers only be subpoenaed when Congress cannot obtain the relevant information from other sources.

**The Subpoena Seeks Evidence Protected from Disclosure by the First Amendment**

Aspects of the Subpoena, though framed in terms of investigating President Trump's official actions, also target President Trump's presidential campaign. The Subpoena threatens to force President Trump to reveal the inner workings of his Presidential campaign, including his political beliefs, strategy, fundraising, and speech. Particularly in light of the Committee's partisan hostility to President Trump, the First Amendment requires balancing the competing private and public interests at stake. Because the Subpoena's invasion of President Trump's campaign is not for a valid legislative purpose, the Committee may not constitutionally require President Trump to produce evidence or testify about his political relationships or other private affairs.

**The Committee is Not Duly Authorized**

Congress' failure to act in accordance with its own rules is judicially cognizable. *Yellin v. United States*, 374 U.S. 109, 114 (1963). This is particularly significant where, as here, a person's fundamental rights are involved. While the Court has determined authorized congressional committees have certain subpoena authority implied by Article I of the Constitution, *McGrain v. Daugherty*, 273 U.S. 135, 174 (1927), the Committee is not an authorized congressional committee because it fails to comport with its own authorizing resolution, House Resolution 503.

The composition of the Committee is governed by Section 2 of H. Res. 503. Section 2(a) states "Appointment Of Members.—The Speaker shall appoint 13 Members to the Select Committee, 5 of whom shall be appointed after consultation with the minority leader." H. Res. 503 117th Cong. (2021). Speaker Pelosi has appointed only nine members to the Committee: seven Democrats and two Republicans, rather than the 13 mandated by H.R. 503. Further, of those nine members none were appointed after consultation with the minority member, as is required by the authorizing resolution. H. Res. 503 § 2(a), 117th Cong. (2021). Thus, the Committee as it currently stands—and stood at the time it issued the subpoenas in question—is not a duly constituted Committee and has no authority to conduct business, rendering Chairman Thompson's purported subpoenas invalid and unenforceable.

**The Subpoena Lacks Authorization from a Ranking Member**

H. Res. 503 provides that "[t]he chair of the Select Committee, upon consultation with the ranking minority member, may order the taking of depositions, including pursuant to subpoena, by a Member or counsel of the Select Committee, in the same manner as a standing committee pursuant to section 3(b)(1) of House Resolution 8, One Hundred Seventeenth Congress." Section 3(b)(1) of H. Res. 8 provides that, "[d]uring the One Hundred Seventeenth Congress, the chair of a standing committee. . . , upon consultation with the ranking minority member of such committee, may order the taking of depositions, including pursuant to subpoena, by a member or counsel of such committee."

A CALIFORNIA PROFESSIONAL CORPORATION WITH OFFICES IN

SAN FRANCISCO | NEWPORT BEACH | WASHINGTON, D.C. METRO-ALEXANDRIA | NEWARK-NEW YORK | WEST PALM BEACH

Timothy J. Heaphy
November 4, 2022
Page 12 of 24

Speaker Pelosi appointed Chairman Thompson, the original sponsor of H.R. 3233, to serve as chair of the Select Committee and appointed six additional Democrat members: Reps. Lofgren, Schiff, Aguilar, Murphy (FL), Raskin, and Luria. She also appointed Republican Rep. Cheney without any designation of position. 167 Cong. Rec. H3597 (2021). On September 2, 2021, Chairman Thompson announced in a press release that "he has named Representative Liz Cheney (R-WY) to serve as the Vice Chair of the Select Committee."

There is no—nor given Speaker Pelosi's exclusion of members selected by the Minority Leader could there be any—"ranking minority member" on the Select Committee. *See* Committee, *Membership* (accessed Oct. 27, 2022), https://january6th.house.gov/about/membership. To wit, both on the subpoena and at the October 21, 2022, hearing, Congresswoman Cheney is referred to as the "Vice Chair"—not the ranking member.

Chairman Thompson has not complied—and could not comply—with the requirement of Section 5(c)(6)(A) of H. Res. 503 to consult with the ranking minority member prior to ordering the taking of a deposition. Chairman Thompson has not complied—and could not comply—with the requirement of Section 3(b)(1) of H. Res. 8, to consult with the ranking minority member prior to ordering the taking of a deposition.

Chairman Thompson has not complied—and could not comply—with the requirement of Section 2 of the Procedures for the Use of Deposition Authority submitted by the Chair of the Committee on Rules for printing in the Congressional Record on January 4, 2021, to consult with the ranking minority member prior to ordering the taking of a deposition.

Further, Section 6 of the Procedures for the Use of Deposition Authority require depositions to be conducted in 60-minute rounds with questions asked according to the following process:

> In each round, the member(s) or committee counsel designated by the chair shall ask questions first, and the member(s) or committee counsel designated by the ranking minority member shall ask questions second.

As there is no ranking member, there can be no committee counsel designated by the ranking minority member. Thus, by the clear terms of its transmittal letter the Committee is intentionally planning to violate its own rules in conducting the deposition of President Trump by Members, all of whom are politically hostile to him, and "multiple former federal prosecutors" chosen by those very same Members.

In sum, Chairman Thompson and the Committee have authority to order a deposition *only after* consulting with the ranking minority member of the committee. There is no ranking minority member of the Committee. Thus, Chairman Thompson and the Committee do not have authority under the House Rules to order a deposition.

Timothy J. Heaphy
November 4, 2022
Page 13 of 24

## OBJECTIONS TO SPECIFIC REQUESTS

### Request 1

Request 1 calls for communications regardless of their relevance to the Committee's investigation, seeking "[a]ll records of any telephone calls, text messages, or communications sent through Signal or any other means, placed or received by you or at your direction on January 6, 2021." There is no subject matter qualifier. Further, while the Subpoena's cover letter limits the requested production to "records in [President Trump's] *custody and control that [President Trump is] uniquely positioned* to provide to the Select Committee," as required by *Mazars*, 140 S. Ct. at 2036, the Definitions and Instructions state that President Trump must "produce all responsive documents, regardless of classification level, that are in [his] possession, custody, or control, *whether held by [President Trump] or [President Trump's] past or present agents, employees, and representatives acting on [President Trump's] behalf*[,]" including "*all documents that [President Trump] ha[s] a legal right to obtain, that [President Trump] ha[s] a right to copy, or to which [President Trump] ha[s] access*, as well as documents that [President Trump] ha[s] placed in the temporary possession, custody, or control of any third party," in violation of *Mazars*, 140 S. Ct. at 2036.

We object to this request to the extent it seeks information protected by a claim of privilege, including the attorney-client privilege, the work product doctrine, and/or any other applicable privileges or immunities. We object to this request as vague, overly broad, unduly burdensome, and as seeking information not likely to lead to the discovery of relevant information. We object under the Fourth Amendment and the Constitution's due process protections as this request is not stated with specificity. We object to this request to the extent that it calls for information that is not in our client's possession, custody, or control. To the extent that the request seeks records in the possession of others, we object to the production by President Trump because the Committee should obtain the documents from those other parties instead of seeking them from President Trump. We further object to this request to the extent it seeks documents already within the Committee's possession.

### Request 2

Request 2 seeks evidence of *any* call or communication between a member of Congress and a President in his final three weeks in office that referred or related *in any way* to the election. While the Subpoena's cover letter limits the requested production to "records in [President Trump's] *custody and control that [President Trump is] uniquely positioned* to provide to the Select Committee," as required by *Mazars*, 140 S. Ct. at 2036, the Definitions and Instructions state that President Trump must "produce all responsive documents, regardless of classification level, that are in [his] possession, custody, or control, *whether held by [President Trump] or [President Trump's] past or present agents, employees, and representatives acting on [President Trump's] behalf*[,]" including "*all documents that [President Trump] ha[s] a legal right to obtain, that [President Trump] ha[s] a right to copy, or to which [President Trump] ha[s] access*, as well as documents that [President Trump] ha[s] placed in the temporary possession, custody, or control of any third party," in violation of *Mazars*, 140 S. Ct. at 2036.

We object to this request as vague, overly broad, unduly burdensome, and as seeking information not likely to lead to the discovery of relevant information. We object under the Fourth Amendment and

Timothy J. Heaphy
November 4, 2022
Page 14 of 24

the Constitution's due process protections as this request is not stated with specificity. We object to this request to the extent that it calls for information that is not in our client's possession, custody, or control. To the extent that the request seeks records in the possession of others, we object to the production by President Trump because the Committee should obtain the documents from those other parties instead of seeking them from President Trump. We further object to this request to the extent it seeks documents already within the Committee's possession.

### Request 3

Request 3 seeks "[a]ll photographs and video recordings taken on January 6, 2021" regarding "the January 6, 2021, rally on the Ellipse, the joint session of Congress on January 6, 2021, or the riot that occurred at the United States Capitol on January 6, 2021." This request fails to specify whether it seeks photographs and video recordings taken by President Trump, or by anyone. While the Schedule's preamble excludes copies of "public media accounts," that term is not defined. And Instruction 1 requires President Trump to produce all documents "to which [he] ha[s] access." Indeed, although the Subpoena's cover letter limits the requested production to "records in [President Trump's] *custody and control that [President Trump is] uniquely positioned* to provide to the Select Committee," as required by *Mazars*, 140 S. Ct. at 2036, the Definitions and Instructions state that President Trump must "produce all responsive documents, regardless of classification level, that are in [his] possession, custody, or control, *whether held by [President Trump] or [President Trump's] past or present agents, employees, and representatives acting on [President Trump's] behalf*[,]" including "*all documents that [President Trump] ha[s] a legal right to obtain, that [President Trump] ha[s] a right to copy, or to which [President Trump] ha[s] access*, as well as documents that [President Trump] ha[s] placed in the temporary possession, custody, or control of any third party," in violation of *Mazars*, 140 S. Ct. at 2036.

We object to this request as vague, overly broad, unduly burdensome, and as seeking information not likely to lead to the discovery of relevant information. We object under the Fourth Amendment and the Constitution's due process protections as this request is not stated with specificity. We object to this request to the extent that it calls for information that is not in our client's possession, custody, or control. To the extent that the request seeks records in the possession of others, we object to the production by President Trump because the Committee should obtain the documents from those other parties instead of seeking them from President Trump. We further object to this request to the extent it seeks documents already within the Committee's possession.

### Request 4

Request 4 seeking "any telephone calls, text messages, or communications through Signal or any other means, placed or received by you or at your direction, including records of any calls you joined as an active or passive participant, from November 3, 2020, to January 5, 2021, relating in any way to the 2020 presidential election or the joint session of Congress on January 6, 2021." While the Subpoena's cover letter limits the requested production to "records in [President Trump's] *custody and control that [President Trump is] uniquely positioned* to provide to the Select Committee," as required by *Mazars*, 140 S. Ct. at 2036, the Definitions and Instructions state that President Trump must "produce all

Timothy J. Heaphy
November 4, 2022
Page 15 of 24

responsive documents, regardless of classification level, that are in [his] possession, custody, or control, *whether held by [President Trump] or [President Trump's] past or present agents, employees, and representatives acting on [President Trump's] behalf*[,]" including "*all documents that [President Trump] ha[s] a legal right to obtain, that [President Trump] ha[s] a right to copy, or to which [President Trump] ha[s] access*, as well as documents that [President Trump] ha[s] placed in the temporary possession, custody, or control of any third party," in violation of *Mazars*, 140 S. Ct. at 2036.

We object to this request to the extent it seeks information protected by a claim of privilege, including the attorney-client privilege, the work product doctrine, and/or any other applicable privileges or immunities. We object to this request as vague, overly broad, unduly burdensome, and as seeking information not likely to lead to the discovery of relevant information. We object under the Fourth Amendment and the Constitution's due process protections as this request is not stated with specificity. We object to this request to the extent that it calls for information that is not in our client's possession, custody, or control. To the extent that the request seeks records in the possession of others, we object to the production by President Trump because the Committee should obtain the documents from those other parties instead of seeking them from President Trump. We further object to this request to the extent it seeks documents already within the Committee's possession.

**Request 5**

Request 5 seeks, from November 3, 2020, to the present (a two-year duration), "all notes (including electronic and hand-written notes), summaries, memoranda of conversation, readouts, or other documents containing or memorializing communications you made or received" regarding the joint session of Congress on January 6, 2021. While the Subpoena's cover letter limits the requested production to "records in [President Trump's] *custody and control that [President Trump is] uniquely positioned* to provide to the Select Committee," as required by *Mazars*, 140 S. Ct. at 2036, the Definitions and Instructions state that President Trump must "produce all responsive documents, regardless of classification level, that are in [his] possession, custody, or control, *whether held by [President Trump] or [President Trump's] past or present agents, employees, and representatives acting on [President Trump's] behalf*[,]" including "*all documents that [President Trump] ha[s] a legal right to obtain, that [President Trump] ha[s] a right to copy, or to which [President Trump] ha[s] access*, as well as documents that [President Trump] ha[s] placed in the temporary possession, custody, or control of any third party," in violation of *Mazars*, 140 S. Ct. at 2036.

We object to this request to the extent it seeks information protected by a claim of privilege, including the attorney-client privilege, the work product doctrine, and/or any other applicable privileges or immunities. We object to this request as vague, overly broad, unduly burdensome, and as seeking information not likely to lead to the discovery of relevant information. We object under the Fourth Amendment and the Constitution's due process protections as this request is not stated with specificity. We object to this request to the extent that it calls for information that is not in our client's possession, custody, or control. To the extent that the request seeks records in the possession of others, we object to the production by President Trump because the Committee should obtain the documents from those other

Timothy J. Heaphy
November 4, 2022
Page 16 of 24

parties instead of seeking them from President Trump.  We further object to this request to the extent it seeks documents already within the Committee's possession.

**Request 6**

Request 6 seeks, from September 1, 2020, to the present (more than a two-year duration), "all documents, including communications sent or received through Signal or any other means," relating to, among others, "anyone who assembled in Washington, D.C., on January 6th for the purposes related to the 2020 presidential election, the joint session of Congress, or the rally on the Ellipse." While the Subpoena's cover letter limits the requested production to "records in [President Trump's] *custody and control that [President Trump is] uniquely positioned* to provide to the Select Committee," as required by *Mazars*, 140 S. Ct. at 2036, the Definitions and Instructions state that President Trump must "produce all responsive documents, regardless of classification level, that are in [his] possession, custody, or control, *whether held by [President Trump] or [President Trump's] past or present agents, employees, and representatives acting on [President Trump's] behalf*[,]" including "*all documents that [President Trump] ha[s] a legal right to obtain, that [President Trump] ha[s] a right to copy, or to which [President Trump] ha[s] access*, as well as documents that [President Trump] ha[s] placed in the temporary possession, custody, or control of any third party," in violation of  *Mazars*, 140 S. Ct. at 2036.

We object to this request to the extent it seeks information protected by a claim of privilege, including the attorney-client privilege, the work product doctrine, and/or any other applicable privileges or immunities. We object to this request as vague, overly broad, unduly burdensome, and as seeking information not likely to lead to the discovery of relevant information. We object under the Fourth Amendment and the Constitution's due process protections as this request is not stated with specificity. We object to this request to the extent that it calls for information that is not in our client's possession, custody, or control. To the extent that the request seeks records in the possession of others, we object to the production by President Trump because the Committee should obtain the documents from those other parties instead of seeking them from President Trump.  We further object to this request to the extent it seeks documents already within the Committee's possession.

**Request 7**

Request 7 seeks, from September 1, 2020, to January 20, 2021, "any communications, sent or received through Signal or any other means," including memoranda, regarding any "plans or efforts" to encourage state politicians or officials to delay or change their state's presidential certification, or to have electors pledged to President Trump. While the Subpoena's cover letter limits the requested production to "records in [President Trump's] *custody and control that [President Trump is] uniquely positioned* to provide to the Select Committee," as required by *Mazars*, 140 S. Ct. at 2036, the Definitions and Instructions state that President Trump must "produce all responsive documents, regardless of classification level, that are in [his] possession, custody, or control, *whether held by [President Trump] or [President Trump's] past or present agents, employees, and representatives acting on [President Trump's] behalf*[,]" including "*all documents that [President Trump] ha[s] a legal right to obtain, that*

Timothy J. Heaphy
November 4, 2022
Page 17 of 24

*[President Trump] ha[s] a right to copy, or to which [President Trump] ha[s] access*, as well as documents that [President Trump] ha[s] placed in the temporary possession, custody, or control of any third party," in violation of *Mazars*, 140 S. Ct. at 2036.

We object to this request to the extent it seeks information protected by a claim of privilege, including the attorney-client privilege, the work product doctrine, and/or any other applicable privileges or immunities. We object to this request as vague, overly broad, unduly burdensome, and as seeking information not likely to lead to the discovery of relevant information. We object under the Fourth Amendment and the Constitution's due process protections as this request is not stated with specificity. We object to this request to the extent that it calls for information that is not in our client's possession, custody, or control. To the extent that the request seeks records in the possession of others, we object to the production by President Trump because the Committee should obtain the documents from those other parties instead of seeking them from President Trump.  We further object to this request to the extent it seeks documents already within the Committee's possession.

**Request 8**

Request 8 demands, among other things, social media posts from November 3, 2020 to January 6, 2021, regarding the Vice President, the joint sessions of Congress, or the Ellipse rally on January 6, 2021, and all communications regarding same. Although the Schedule's preamble excludes "public media accounts," it does not define this term. The Committee has ready access to social media posts *created* by President Trump, which are not uniquely in his possession. While the Subpoena's cover letter limits the requested production to "records in [President Trump's] *custody and control that [President Trump is] uniquely positioned* to provide to the Select Committee," as required by *Mazars*, 140 S. Ct. at 2036, the Definitions and Instructions state that President Trump must "produce all responsive documents, regardless of classification level, that are in [his] possession, custody, or control, *whether held by [President Trump] or [President Trump's] past or present agents, employees, and representatives acting on [President Trump's] behalf*[,]" including "*all documents that [President Trump] ha[s] a legal right to obtain, that [President Trump] ha[s] a right to copy, or to which [President Trump] ha[s] access*, as well as documents that [President Trump] ha[s] placed in the temporary possession, custody, or control of any third party," in violation of *Mazars*, 140 S. Ct. at 2036.

We object to this request to the extent it seeks information protected by a claim of privilege, including the attorney-client privilege, the work product doctrine, and/or any other applicable privileges or immunities. We object to this request as vague, overly broad, unduly burdensome, and as seeking information not likely to lead to the discovery of relevant information. We object under the Fourth Amendment and the Constitution's due process protections as this request is not stated with specificity. We object to this request to the extent that it calls for information that is not in our client's possession, custody, or control. To the extent that the request seeks records in the possession of others, we object to the production by President Trump because the Committee should obtain the documents from those other parties instead of seeking them from President Trump.  We further object to this request to the extent it seeks documents already within the Committee's possession.

Timothy J. Heaphy
November 4, 2022
Page 18 of 24

### Request 9

Request 9 seeks all documents regarding "both the Department of Justice and actions, statements or correspondence relating to the 2020 presidential election." While the Subpoena's cover letter limits the requested production to "records in [President Trump's] *custody and control that [President Trump is] uniquely positioned* to provide to the Select Committee," as required by *Mazars*, 140 S. Ct. at 2036, the Definitions and Instructions state that President Trump must "produce all responsive documents, regardless of classification level, that are in [his] possession, custody, or control, *whether held by [President Trump] or [President Trump's] past or present agents, employees, and representatives acting on [President Trump's] behalf*[,]" including "*all documents that [President Trump] ha[s] a legal right to obtain, that [President Trump] ha[s] a right to copy, or to which [President Trump] ha[s] access*, as well as documents that [President Trump] ha[s] placed in the temporary possession, custody, or control of any third party," in violation of *Mazars*, 140 S. Ct. at 2036.

We object to this request to the extent it seeks information protected by a claim of privilege, including the attorney-client privilege, the work product doctrine, and/or any other applicable privileges or immunities. We object to this request as vague, overly broad, unduly burdensome, and as seeking information not likely to lead to the discovery of relevant information. We object under the Fourth Amendment and the Constitution's due process protections as this request is not stated with specificity. We object to this request to the extent that it calls for information that is not in our client's possession, custody, or control. To the extent that the request seeks records in the possession of others, we object to the production by President Trump because the Committee should obtain the documents from those other parties instead of seeking them from President Trump. We further object to this request to the extent it seeks documents already within the Committee's possession.

### Request 10

Request 10 seeks, from November 3, 2020, to the present (a two-year duration), all documents "relating or referring in any way to Vice President Michael Pence's role, or any actions he might take, during the joint session of Congress on January 6, 2021." While the Subpoena's cover letter limits the requested production to "records in [President Trump's] *custody and control that [President Trump is] uniquely positioned* to provide to the Select Committee," as required by *Mazars*, 140 S. Ct. at 2036, the Definitions and Instructions state that President Trump must "produce all responsive documents, regardless of classification level, that are in [his] possession, custody, or control, *whether held by [President Trump] or [President Trump's] past or present agents, employees, and representatives acting on [President Trump's] behalf*[,]" including "*all documents that [President Trump] ha[s] a legal right to obtain, that [President Trump] ha[s] a right to copy, or to which [President Trump] ha[s] access*, as well as documents that [President Trump] ha[s] placed in the temporary possession, custody, or control of any third party," in violation of *Mazars*, 140 S. Ct. at 2036.

Timothy J. Heaphy
November 4, 2022
Page 19 of 24

We object to this request to the extent it seeks information protected by a claim of privilege, including the attorney-client privilege, the work product doctrine, and/or any other applicable privileges or immunities. We object to this request as vague, overly broad, unduly burdensome, and as seeking information not likely to lead to the discovery of relevant information. We object under the Fourth Amendment and the Constitution's due process protections as this request is not stated with specificity. We object to this request to the extent that it calls for information that is not in our client's possession, custody, or control. To the extent that the request seeks records in the possession of others, we object to the production by President Trump because the Committee should obtain the documents from those other parties instead of seeking them from President Trump.  We further object to this request to the extent it seeks documents already within the Committee's possession.

**Request 11**

Request 11 seeks, from November 3, 2020, to January 6, 2021, all documents related to "Representative Scott Perry or any other Member of Congress and regarding presidential electoral votes; planning for January 6, 2021, or the joint session on that day; changes of personnel at the Department of Justice; or any other topic related to an effort to alter the results of the November 3, 2022, presidential election." While the Subpoena's cover letter limits the requested production to "records in [President Trump's] *custody and control that [President Trump is] uniquely positioned* to provide to the Select Committee," as required by *Mazars*, 140 S. Ct. at 2036, the Definitions and Instructions state that President Trump must "produce all responsive documents, regardless of classification level, that are in [his] possession, custody, or control, *whether held by [President Trump] or [President Trump's] past or present agents, employees, and representatives acting on [President Trump's] behalf*[,]" including "*all documents that [President Trump] ha[s] a legal right to obtain, that [President Trump] ha[s] a right to copy, or to which [President Trump] ha[s] access*, as well as documents that [President Trump] ha[s] placed in the temporary possession, custody, or control of any third party," in violation of  *Mazars*, 140 S. Ct. at 2036.

We object to this request to the extent it seeks information protected by a claim of privilege, including the attorney-client privilege, the work product doctrine, and/or any other applicable privileges or immunities. We object to this request as vague, overly broad, unduly burdensome, and as seeking information not likely to lead to the discovery of relevant information. We object under the Fourth Amendment and the Constitution's due process protections as this request is not stated with specificity. We object to this request to the extent that it calls for information that is not in our client's possession, custody, or control. To the extent that the request seeks records in the possession of others, we object to the production by President Trump because the Committee should obtain the documents from those other parties instead of seeking them from President Trump.  We further object to this request to the extent it seeks documents already within the Committee's possession.

**Request 12**

Request 12 seeks, for the period of November 3, 2020, to January 6, 2021, all documents regarding "efforts to encourage or summon individuals to travel to Washington, D.C. on January 6, 2021, for events

Timothy J. Heaphy
November 4, 2022
Page 20 of 24

related to the 2020 presidential election, the joint session, or the rally on the Ellipse." While the Subpoena's cover letter limits the requested production to "records in [President Trump's] *custody and control that [President Trump is] uniquely positioned* to provide to the Select Committee," as required by *Mazars*, 140 S. Ct. at 2036, the Definitions and Instructions state that President Trump must "produce all responsive documents, regardless of classification level, that are in [his] possession, custody, or control, *whether held by [President Trump] or [President Trump's] past or present agents, employees, and representatives acting on [President Trump's] behalf*[,]" including "*all documents that [President Trump] ha[s] a legal right to obtain, that [President Trump] ha[s] a right to copy, or to which [President Trump] ha[s] access*, as well as documents that [President Trump] ha[s] placed in the temporary possession, custody, or control of any third party," in violation of *Mazars*, 140 S. Ct. at 2036.

We object to this request to the extent it seeks information protected by a claim of privilege, including the attorney-client privilege, the work product doctrine, and/or any other applicable privileges or immunities. We object to this request as vague, overly broad, unduly burdensome, and as seeking information not likely to lead to the discovery of relevant information. We object under the Fourth Amendment and the Constitution's due process protections as this request is not stated with specificity. We object to this request to the extent that it calls for information that is not in our client's possession, custody, or control. To the extent that the request seeks records in the possession of others, we object to the production by President Trump because the Committee should obtain the documents from those other parties instead of seeking them from President Trump. We further object to this request to the extent it seeks documents already within the Committee's possession.

**Request 13**

Request 13 seeks, from November 3, 2020, to the present (a two-year duration), all documents regarding any "filing or the potential for filing any lawsuit, petition, motion, or other court filing that may have had the effect of delaying or disrupting the joint session of Congress or January 6, 2021." While the Subpoena's cover letter limits the requested production to "records in [President Trump's] *custody and control that [President Trump is] uniquely positioned* to provide to the Select Committee," as required by *Mazars*, 140 S. Ct. at 2036, the Definitions and Instructions state that President Trump must "produce all responsive documents, regardless of classification level, that are in [his] possession, custody, or control, *whether held by [President Trump] or [President Trump's] past or present agents, employees, and representatives acting on [President Trump's] behalf*[,]" including "*all documents that [President Trump] ha[s] a legal right to obtain, that [President Trump] ha[s] a right to copy, or to which [President Trump] ha[s] access*, as well as documents that [President Trump] ha[s] placed in the temporary possession, custody, or control of any third party," in violation of *Mazars*, 140 S. Ct. at 2036.

We object to this request to the extent it seeks information protected by a claim of privilege, including the attorney-client privilege, the work product doctrine, and/or any other applicable privileges or immunities. We object to this request as vague, overly broad, unduly burdensome, and as seeking information not likely to lead to the discovery of relevant information. We object under the Fourth Amendment and the Constitution's due process protections as this request is not stated with specificity.

Timothy J. Heaphy
November 4, 2022
Page 21 of 24

We object to this request to the extent that it calls for information that is not in our client's possession, custody, or control. To the extent that the request seeks records in the possession of others, we object to the production by President Trump because the Committee should obtain the documents from those other parties instead of seeking them from President Trump.  We further object to this request to the extent it seeks documents already within the Committee's possession.

### Request 14

Request 14 seeks communications of President Trump with 13 separate people, including attorneys, regardless of whether they are relevant to the Committee's mandate or any particular subject, if they occurred between November 3, 2020 and January 20, 2021. While the Subpoena's cover letter limits the requested production to "records in [President Trump's] *custody and control that [President Trump is] uniquely positioned* to provide to the Select Committee," as required by *Mazars*, 140 S. Ct. at 2036, the Definitions and Instructions state that President Trump must "produce all responsive documents, regardless of classification level, that are in [his] possession, custody, or control, *whether held by [President Trump] or [President Trump's] past or present agents, employees, and representatives acting on [President Trump's] behalf*[,]" including "*all documents that [President Trump] ha[s] a legal right to obtain, that [President Trump] ha[s] a right to copy, or to which [President Trump] ha[s] access*, as well as documents that [President Trump] ha[s] placed in the temporary possession, custody, or control of any third party," in violation of  *Mazars*, 140 S. Ct. at 2036.

We object to this request to the extent it seeks information protected by a claim of privilege, including the attorney-client privilege, the work product doctrine, and/or any other applicable privileges or immunities. We object to this request as vague, overly broad, unduly burdensome, and as seeking information not likely to lead to the discovery of relevant information. We object under the Fourth Amendment and the Constitution's due process protections as this request is not stated with specificity. We object to this request to the extent that it calls for information that is not in our client's possession, custody, or control. To the extent that the request seeks records in the possession of others, we object to the production by President Trump because the Committee should obtain the documents from those other parties instead of seeking them from President Trump.  We further object to this request to the extent it seeks documents already within the Committee's possession.

### Request 15

Request 15 seeks, for the period of November 3, 2020, to January 6, 2021, all documents related in any way to "litigation losses related to the 2020 election." While the Subpoena's cover letter limits the requested production to "records in [President Trump's] *custody and control that [President Trump is] uniquely positioned* to provide to the Select Committee," as required by *Mazars*, 140 S. Ct. at 2036, the Definitions and Instructions state that President Trump must "produce all responsive documents, regardless of classification level, that are in [his] possession, custody, or control, *whether held by [President Trump] or [President Trump's] past or present agents, employees, and representatives acting on [President Trump's] behalf*[,]" including "*all documents that [President Trump] ha[s] a legal right to obtain, that [President Trump] ha[s] a right to copy, or to which [President Trump] ha[s] access*, as well

Timothy J. Heaphy
November 4, 2022
Page 22 of 24

as documents that [President Trump] ha[s] placed in the temporary possession, custody, or control of any third party," in violation of *Mazars*, 140 S. Ct. at 2036.

We object to this request to the extent it seeks information protected by a claim of privilege, including the attorney-client privilege, the work product doctrine, and/or any other applicable privileges or immunities. We object to this request as vague, overly broad, unduly burdensome, and as seeking information not likely to lead to the discovery of relevant information. We object under the Fourth Amendment and the Constitution's due process protections as this request is not stated with specificity. We object to this request to the extent that it calls for information that is not in our client's possession, custody, or control. To the extent that the request seeks records in the possession of others, we object to the production by President Trump because the Committee should obtain the documents from those other parties instead of seeking them from President Trump. We further object to this request to the extent it seeks documents already within the Committee's possession.

**Request 16**

Request 16 seeks "All documents, including communications . . . from July 1, 2021, to the present, relating or referring in any way to the investigation by the Select Committee and involving contacts with, or efforts to contact:" J6 Committee witnesses and their counsel, including discussions of paying for witnesses' legal costs. While the Subpoena's cover letter limits the requested production to "records in [President Trump's] *custody and control that [President Trump is] uniquely positioned* to provide to the Select Committee," as required by *Mazars*, 140 S. Ct. at 2036, the Definitions and Instructions state that President Trump must "produce all responsive documents, regardless of classification level, that are in [his] possession, custody, or control, *whether held by [President Trump] or [President Trump's] past or present agents, employees, and representatives acting on [President Trump's] behalf*[,]" including "*all documents that [President Trump] ha[s] a legal right to obtain, that [President Trump] ha[s] a right to copy, or to which [President Trump] ha[s] access,* as well as documents that [President Trump] ha[s] placed in the temporary possession, custody, or control of any third party," in violation of *Mazars*, 140 S. Ct. at 2036.

We object to this request to the extent it seeks information protected by a claim of privilege, including the attorney-client privilege, the work product doctrine, and/or any other applicable privileges or immunities. We object to this request as vague, overly broad, unduly burdensome, and as seeking information not likely to lead to the discovery of relevant information. We object under the Fourth Amendment and the Constitution's due process protections as this request is not stated with specificity. We object to this request to the extent that it calls for information that is not in our client's possession, custody, or control. To the extent that the request seeks records in the possession of others, we object to the production by President Trump because the Committee should obtain the documents from those other parties instead of seeking them from President Trump. We further object to this request to the extent it seeks documents already within the Committee's possession.

**Request 17**

Timothy J. Heaphy
November 4, 2022
Page 23 of 24

Request No. 17 seeks "All documents, including communications . . . relating or referring in any way to fundraising efforts based on claims of election fraud or a stolen election." As you know, numerous entities fundraised in connection with the 2020 election, including many over which President Trump had no control.  With the addition of the expansive "relating or referring in any way" clause, the potential scope of this request is extensive. Further, although the Subpoena's cover letter limits the requested production to "records in [President Trump's] *custody and control that [President Trump is] uniquely positioned* to provide to the Select Committee," as required by *Mazars*, 140 S. Ct. at 2036, the Definitions and Instructions state that President Trump must "produce all responsive documents, regardless of classification level, that are in [his] possession, custody, or control, *whether held by [President Trump] or [President Trump's] past or present agents, employees, and representatives acting on [President Trump's] behalf*[,]" including "*all documents that [President Trump] ha[s] a legal right to obtain, that [President Trump] ha[s] a right to copy, or to which [President Trump] ha[s] access*, as well as documents that [President Trump] ha[s] placed in the temporary possession, custody, or control of any third party," in violation of *Mazars*, 140 S. Ct. at 2036.

We object to this request to the extent it seeks information protected by a claim of privilege, including the attorney-client privilege, the work product doctrine, and/or any other applicable privileges or immunities. We object to this request as vague, overly broad, unduly burdensome, and as seeking information not likely to lead to the discovery of relevant information. We object under the Fourth Amendment and the Constitution's due process protections as this request is not stated with specificity. We object to this request to the extent that it calls for information that is not in our client's possession, custody, or control. To the extent that the request seeks records in the possession of others, we object to the production by President Trump because the Committee should obtain the documents from those other parties instead of seeking them from President Trump.  We further object to this request to the extent it seeks documents already within the Committee's possession.

**Request 18**

Request 18 seeks all documents "relating or referring in any way to the destruction of materials that previously existed and that would have been covered by any part of this subpoena, or any other subpoena issued by the Select Committee to other individuals." While the Subpoena's cover letter limits the requested production to "records in [President Trump's] *custody and control that [President Trump is] uniquely positioned* to provide to the Select Committee," as required by *Mazars*, 140 S. Ct. at 2036, the Definitions and Instructions state that President Trump must "produce all responsive documents, regardless of classification level, that are in [his] possession, custody, or control, *whether held by [President Trump] or [President Trump's] past or present agents, employees, and representatives acting on [President Trump's] behalf*[,]" including "*all documents that [President Trump] ha[s] a legal right to obtain, that [President Trump] ha[s] a right to copy, or to which [President Trump] ha[s] access*, as well as documents that [President Trump] ha[s] placed in the temporary possession, custody, or control of any third party," in violation of *Mazars*, 140 S. Ct. at 2036.

We object to this request to the extent it seeks information protected by a claim of privilege, including the attorney-client privilege, the work product doctrine, and/or any other applicable privileges

Timothy J. Heaphy
November 4, 2022
Page 24 of 24

or immunities. We object to this request as vague, overly broad, unduly burdensome, and as seeking information not likely to lead to the discovery of relevant information. We object under the Fourth Amendment and the Constitution's due process protections as this request is not stated with specificity. We object to this request to the extent that it calls for information that is not in our client's possession, custody, or control. To the extent that the request seeks records in the possession of others, we object to the production by President Trump because the Committee should obtain the documents from those other parties instead of seeking them from President Trump.  We further object to this request to the extent it seeks documents already within the Committee's possession.

**Request 19**

This request seeks "information sufficient to identify every telephone or other communications device you used from November 3, 2020, to January 20, 2021." This request is not limited to personal devices owned by the President (as opposed to government devices over which the Executive Branch has control and records). Further, this request seeks "information," not documents, and therefore reads more like a request for testimony on written questions than a document request. We object to this request as vague, overly broad, and not a proper document request.

* * * * *

As stated above, we invite the Committee to address these concerns and objections.

Thank you for your attention to this. President Trump retains all rights, waiving none.

Sincerely,

David A. Warrington